## NORFOLK COUNTY.

### Hannah K. French *vs.* Inhabitants of Quincy.

A town may erect a town-house of sufficient capacity for all the business which it may have occasion to do in such a building, and may in its erection make suitable provision for its prospective wants; and if the building contains rooms not wanted for the time being for municipal business, the town may let them temporarily, or allow them to be used gratuitously. And the condition of a deed of land to the inhabitants of a town, which provides that the same " shall not be used for any other purpose than as a place for a town-house for said inhabitants," is not broken by the erection thereon of a town-house with a hall in the second story, which has been used for miscellaneous purposes, and rooms upon the sides of the entrance, which have been let and used for shops and other purposes not connected with municipal business, and the construction and use for several years of a lock-up under the building.

WRIT OF ENTRY by the devisee of Daniel French against the inhabitants of Quincy, to recover a lot of land in the village of Quincy, upon which the town-house of the defendants stands. At the trial in this court, before *Metcalf*, J., a verdict was taken for the demandant, on an agreement of the parties that if the whole court, upon a report of the case, should be of opinion that the verdict should not stand, judgment should be rendered for the tenants. The facts are stated in the opinion.

*C. T. Russell & J. R. Perkins,* for the demandant. A town-house is " a house or building in which is transacted the public business of a town ; " Worcester's Dictionary : or " the house where the public business of the town is transacted by the inhabitants in legal meeting ; " Webster's Dictionary. A place or a town-house therefore means a place for a building for the transaction of the public business of the town ; and to this purpose the use of the parcel of land is confined by the terms of the deed. The language is exclusive, that the land shall not

be used for any other purpose; and if this building was con-structed and has been used in any substantial part for other purposes than those of a town-house, the condition is broken. No liberality of construction can comprehend the various uses proved, under the name of town-house. If a distinct building had been erected for either of them, the question would no admit of doubt; but the present building was erected with reference to these uses. Can the tenants carry up their town-house, and use the lower portion for shops? or extend their walls so as to surround a shop?

The object of the grantor was that there should be nothing else but a town-house in the vicinity of his hotel; and it is no answer to say that other uses would be convenient or use-ful to the town. An almshouse, a school-house, or a hospital would be useful. In this case, a lock-up has been built, and used for six or seven years, and a lock-up is generally considered as a nuisance. This use is not justified by the fact that the tenants can thereby render their town-house a cheaper structure; because there is an express restriction. In this respect, the case differs from *Jackson* v. *Pike*, 9 Cow. 69. See *Gillis* v. *Bailey*, 1 Fost. (N. H.) 149; *Sargent* v. *Adams*, 3 Gray, 72; *Grissom* v. *Hill*, 17 Ark. 483.

*B. F. Thomas*, for the tenants, cited *Spaulding* v. *Lowell*, 23 Pick. 71; *Jackson* v. *Pike*, 9 Cow. 69.

CHAPMAN, J.[*] The demanded premises were granted to the tenants by Daniel French, by deed dated April 19, 1844, upon the following condition: " Always however upon this condition, that the parcel of land shall not be used for any other purpose than as a place for a town-house for said inhabitants; and upon any breach of this condition, this conveyance shall be void to all intents and purposes." The grantor died in 1857, and the demandant, his devisee, contends that she is entitled to the land, because the tenants have forfeited their estate by breach of the condition.

The tenants erected a town-house upon the lot soon after the conveyance; it does not appear in what year. Its material was

---

[*] Bigelow, C. J. did not sit in this case.

granite, and it still remains. No other structure has been built upon the land. To this extent, it is admitted that the condition has been performed.

The alleged breach of the condition consists in the uses to which the town-house has been put. In the second story there is a hall. The entrance is in the middle of the front side. On either side of this entrance is a room. One room was rented for a clothing-store and tailoring establishment, from the completion of the building till about 1852. The other was rented for two or three years for an apothecary's shop and refreshment saloon, and afterwards for a bank. It was also used for a time for a post-office, and for a short time for a daguerreotype saloon. A part of the lower story has also been fitted up for a lock-up, and used more or less for that purpose for six or seven years. The hall has been used for lectures, theatrical entertainments, dances and exhibitions. These are the breaches complained of.

There are two general principles to guide us in the decision of the question presented to us: 1. It is sufficient if a condition is performed in substance. Com. Dig. Condition, G. 14. 2. This being a claim for a forfeiture for an alleged breach of a condition subsequent, " the words of the deed are to be taken most strongly against the grantor, and in favor of the grantee." Per Shaw, C. J., in *Canal Bridge* v. *Methodist Religious Society*, 13 Met. 349. *Hadley* v. *Hadley Manuf. Co.* 4 Gray, 140.

No case is found in which a condition similar to the present has received a construction. From the nature of the case, such a similarity could not be expected ; for in every instance, the language of a condition must be adapted to the peculiar circumstances of the case, and the particular intent of the parties.

The definition of " town-house " cited by the demandant as " a house or building in which is transacted the public business of a town " is broad enough to include all the business for which a town is authorized to erect a building. It is not limited to a hall for town-meetings, but may include offices for all the town-officers, and for the keeping of all the records and documents of the town. And as towns increase in population and in business, it becomes necessary that separate rooms shall

be provided for some or all of these officers. As connected with the police department, it is proper that a lock-up should be constructed in the town-house. Since towns are authorized to provide libraries, it is proper to provide a place there for a library. We see no reason why a town may not maintain a school, or a hospital, or an almshouse in its town-house, if the inhabitants see fit to do so. A town is authorized to build a market-house; *Spaulding* v. *Lowell*, 23 Pick. 71; and it may therefore provide for it in its town-house. So far as it has occasion to provide for protection against fires, or for the military service, it may set apart a portion of its town-house in aid of the purpose. This enumeration of particulars might be extended to every object for which a town has authority to provide a building. It does not require even liberality of construction to say that in its town-house it may make provision for all its wants of this character. And while a town is erecting a structure of expensive and permanent materials, it is proper that a reasonable regard should be had to its prospective wants, such as its increase in population and business will be liable to create. Prudence would dictate that a building erected to last for centuries should be sufficient for the necessities and conveniences that may arise for a long time to come. In this view, the building may contain rooms not immediately wanted; and within reasonable limits, the town may exercise its own discretion on the subject. It is not contended that the town of Quincy has done anything unreasonable in this respect. The house contains no rooms but such as the town will be likely to need for municipal purposes.

One further question remains. The town having erected and maintained on the premises a structure suitable for a town-house, and not in any particular unsuitable for such a house, has it broken the condition by any of the uses to which it has allowed the house to be put?

It must be admitted that a town has no authority to erect buildings for the purpose of renting them as tailors' shops, or apothecaries' shops, or daguerreotype or refreshment saloons, or banks, or dancing halls; and if a principal object in the erection

of this building had been all or any of these uses, the erection would have been illegal, and the inhabitants could not legally have been taxed for it. But it does not appear that it was erected for any such object. So far as appears, none of these uses were contemplated beforehand, nor have they interfered with the convenience of the town. It has used the building for municipal purposes, so far as was necessary; and has rented temporarily such portions of the building as it had no occasion to use for the time being.

To hold that any use of any part of the building, except for the transaction of the business of the town, is illegal, would exclude from the hall the meetings of political parties, agricultural societies, and conventions of every kind; and would be unreasonably strict. Such a position is not contended for. It is admitted that the use of the hall for lectures, &c., is not a violation of the condition. But this is a concession that the building may be used for some purposes that are not municipal. It is necessary therefore to establish some reasonable doctrine that should include these cases, and determine what other uses the town-house may be appropriated to without breach of the condition.

The court are of opinion that a town, having in its town-house rooms which it had authority to construct, as part of such building, and not having occasion to use them for the time being, is not obliged to keep them unoccupied, but may derive a revenue from them by renting them, or may allow them to be used gratuitously. Such a use of the property is within its legal authority. And if this be so, the condition of the deed is not broken. For it cannot be construed more strictly than to require of the town to maintain a town-house on the land which shall not be put to any illegal and unauthorized use.

It is suggested that as the facts proved show that the grantee owned and kept a tavern, and the premises were part of the tavern estate, one of the objects of the condition was to prevent such occupation of the premises as would interfere with the profits of the tavern. And the fact is also stated that, when dances and entertainments have been held in the hall,

refreshments have been prepared by other persons. But this is not much insisted on. The obvious answer is, that, as construed by the court, the condition does not by its terms extend to such a case. And it may be added that, though some of the facts occurred in the lifetime of the grantee, it appears that he made no entry for breach of the condition, and that the present demandant has no interest in the tavern estate; and it is immaterial to her whether the profits of the tavern are affected or not.                                                    *Judgment for the tenants.*