Bullene v. Smith.

BULLENE v. SMITH *et al.*, *Appellants*.

73  151
48a 650
73  151
61a 671
73  151
139 271

**Attachment**: WHAT CONSTITUTES A FRAUDULENT "DISPOSITION" OF PROP-
ERTY. Section 398, Revised Statutes 1879, authorizes attachment to
issue in the following, among other cases: (7) Where the defend-
ant has fraudulently *conveyed* or assigned his property, so as to hin-
der or delay his creditors. (8) Where the defendant has fraudu-
lently concealed, removed or *disposed* of his property or effects, so
as to hinder, etc. *Held*, that the word *disposed*, as here used, covers
all such alienations of property as may be made in ways not other-
wise pointed out in the statute; for example, pledges, gifts, pawns,
bailments and other transfers and alienations which may be effected
by mere delivery and without the use of any writing, assignment or
conveyance. It does not include any species of conveyance. Hence,
a charge that defendant has fraudulently disposed of his property,
is not supported by proof that he has executed a fraudulent mort-
gage.

*Appeal from Jasper Circuit Court.*—HON. JOSEPH CRAVENS,
Judge.

REVERSED.

*C. A. Winslow* for appellants.

A fraudulent conveyance and a fraudulent disposition
of property do not mean the same thing in the attachment
law. How far proof of the one would establish the other
would depend entirely on circumstances outside of the
conveyance. Fraudulent disposition is something akin to
fraudulent concealment or removal, and is placed in the
same category. The statute has very carefully classified
the grounds of attachment. There is no necessary rela-
tion between a fraudulent conveyance and fraudulent dis-
position, because the statute has made each the representa-
tive of a distinct class of frauds. The object of the statute
evidently was to reach all manner of frauds upon creditors,
and, to accomplish this satisfactorily, resort was had to
classification. The seventh and ninth clauses embrace
fraudulent conveyance—a class of frauds well defined in
the law. Beyond these, and not embraced within the legal

term, were other fraudulent dispositions of property by removal, concealment and the like, which fall within the eighth and tenth clauses. This case presents an instance of a fraudulent conveyance—made so by statute—within the seventh clause, which cannot be called a fraudulent disposition within the eighth; otherwise, the statutory classification is meaningless—mere distinction without a difference. *Field v. Liverman*, 17 Mo. 218; *Powell v. Matthews*, 10 Mo. 49.

*Smith & Krauthoff* for respondents.

RAY, J.—This was a suit by attachment in the circuit court of Jasper county, Missouri, instituted by the respondents against the appellants, and made returnable to the March term, 1876. The petition, which is in the ordinary form, was filed October the 19th, 1875, and is based on five promissory notes dated October 14th, 1875, due one day after date, and aggregating $703.66.

On October 20th, 1875, respondents, by their agent, R. E. Watson, filed an affidavit for an attachment against appellant, Cyrus Smith, in said cause, which, after stating the amount of the demand in the usual form, proceeds as follows: "And the affiant further states, that he has good reason to believe and does believe that Cyrus Smith, one of the above named defendants, is about to remove his property and effects, and the property and effects of the firm of Smith & Romine, of which he is a member, out of the State of Missouri, with the intent to defraud, hinder or delay his creditors, and the creditors of said firm, in the collection of their debts; that the said Cyrus Smith, one of said defendants, is about fraudulently to convey and assign his property, and the property of the firm of Smith & Romine, of which he is a member, so as to hinder and delay his creditors, and the creditors of said firm; that the said Cyrus Smith, one of said defendants, has fraudulently removed and disposed of, and is about to dispose of his

property, and that of the firm of Smith & Romine, of which he is a member, so as to hinder and delay his creditors, and the creditors of said firm."

On this affidavit a writ of attachment was issued, in the usual form, dated October 20th, 1875 ; which was, on the same day, levied on a saloon and fixtures in Carthage, Missouri, as the property of Smith & Romine, an inventory of which is returned with the writ. The writ was made returnable to the March term, 1876. At the return term the defendant Smith filed a plea in the nature of a plea in abatement, verified by affidavit, putting in issue the truth of the facts alleged in the affidavit on which the attachment was sued out. At the September term, 1877, of said court, the issues arising on said affidavit and plea in abatement coming on for trial before a jury, the plaintiffs, in order to sustain the issues on their side, first introduced a number of witnesses as to the conduct and transactions of defendants prior to the institution of this suit, (which had reference mainly, if not exclusively, to matters and things then wholly past and terminated,) and then offered and read in evidence to the jury the following chattel mortgage :

Know all men by these presents, that we, Smith & Romine, both of the county of Jasper in the State of Missouri, for and in consideration of the sum of $1,200 in hand paid by H. S. Lamb, of the county of Jasper in the State of Missouri, have this day sold to the said H. S. Lamb the following described personal property, to-wit: All the stock now on hand, the fixtures and entire paraphernalia now situate in the saloon in the city of Carthage, Jasper county, Missouri, and more particularly known as the "Carthage Exchange." To have and to hold the property herein conveyed forever, upon the express condition, to-wit: That whereas, the said Smith & Romine, as a firm, did, on the 16th day of October, 1875, make, execute and deliver to the said H. S. Lamb their certain promissory note in

their firm name, which said note is in words and figures following, to-wit:

CARTHAGE, Mo., October 16th, 1875.

Twelve months after date, we. promise. for value received, to pay to the order of H. S. Lamb the sum of $1,200, with interest from date at the rate of ten per cent per annum.

(Signed)              SMITH & ROMINE.

Now, if the said Smith & Romine shall pay the said note with all interest thereon when the same shall become due and payable, and keep the possession of said stock and fixtures or their equal in value, and not allow the same to diminish in value, but at all times keep the same to the present standard, and not dispose of the same except across the counter in the usual trade, and keep and perform all the conditions of this mortgage, and surrender the possession of the same upon the breaking of any of the conditions of this mortgage, when the said Lamb shall so determine, then the said mortgage to be void, otherwise to remain in full force and virtue in law.

Witness our hands and seals this 16th day of October, 1875.

SMITH & ROMINE. [SEAL.]

This mortgage bore date and was duly acknowledged on the 16th day of October, 1875, and was duly recorded in the proper office on the 18th day of October, 1875. As the decision of this case turns upon the character and effect of the mortgage in question, and upon its admissibility in evidence under the issues made by the affidavit and plea in abatement, together with the instructions and rulings of the court touching the same during and after the trial and issues before the jury, it is deemed unnecessary to give any of the evidence offered on the trial except the said mortgage as above set out. At the close of the testimony the court gave the following instructions at the instance of the plaintiffs: " If the jury believe from the evidence that

the defendant Smith, on the 20th day of October, 1875, was about fraudulently to convey and assign his property and the property of the firm of Smith & Romine, so as to hinder and delay his creditors, or the creditors of said firm; or if the jury believe that defendant Smith fraudulently disposed of, or was about to dispose of his property or the property of the firm of Smith & Romine, of which Smith was a member, so as to hinder and delay his or their creditors, they will find the issues for the plaintiffs. If you find that the defendant was broken, involved in debt, insolvent or unable to pay his debts at the time he executed the chattel mortgage read in evidence, and that the consideration for the mortgage was that the mortgagee, H. S. Lamb, should confer pecuniary benefit on defendant by loaning him money to use beyond the reach of his creditors, and that such were the object and purpose of the defendant in making the mortgage, such transaction would be a fraud upon his creditors." To which the defendants excepted.

The defendants then asked the court to give the following instructions: " The court instructs the jury that although they may believe that the chattel mortgage executed by Smith for the firm of Smith & Romine to H. S. Lamb, had the effect to hinder and delay the creditors of Smith and of said firm, yet, unless they further believe that said Smith executed said mortgage with a purpose and intent to defraud, hinder or delay his creditors, or the creditors of said firm, they should find for the defendant. The burden of proof in this case is on the plaintiffs, and unless the jury believe from the evidence that the plaintiffs have shown by the greater weight of testimony, that defendant Smith was at the time of issuing the attachment about to remove his property and effects out of the State of Missouri with the intent to defraud, hinder and delay his creditors, or that at said time defendant Smith was about fraudulently to convey and assign his property so as to hinder and delay his creditors, they should find for the de-

fendant. The court instructs the jury that unless they believe from the evidence that on the 20th day of October, 1875, when the attachment was issued, the defendant Smith was about fraudulently to convey and assign his property, or the property of Smith & Romine, with intent to hinder or delay his creditors, or the creditors of said firm; or that the defendant Smith, on the 20th day of October, 1875, had fraudulently disposed of his property, or the property of said Smith & Romine, with intent to hinder and delay his creditors, or the creditors of Smith & Romine, they will find for defendant Smith." Which instructions the court refused and the defendants excepted.

Whereupon the jury, after argument of counsel, retired to consider of their verdict, and failing to agree that evening, were discharged until next morning, when they again retired under the directions of the court. Whereupon, and after the jury had retired to consider of their verdict, the court had the sheriff to bring the jury into court, and the court of its own motion gave the following instruction, in the presence of the attorneys for both sides, to-wit: "The court instructs the jury that the chattel mortgage executed by defendant Smith to Lamb for the firm of Smith & Romine was fraudulent and void in law as to any creditors of said firm, and the property so mortgaged was subject to attachment for the debts of said firm existing at the time of the execution of the same." To which action of the court in recalling the jury without any member of said jury having so requested, and to the giving of said instruction, defendant Cyrus Smith, by attorney, then and there excepted.

Whereupon the jury returned the following verdict: " We, the jury, find the issues for the plaintiffs."

W. L. REID, Foreman.

Whereupon the court rendered the following judgment thereon : " It is, therefore considered and adjudged by the court that the attachment in this cause be sustained, and that plaintiffs recover of defendants their costs ex-

pended in this trial and have thereof execution," etc. Thereupon, and within four days thereafter, the defendant Smith filed his motion to set aside the verdict of the jury and the judgment of the court thereon, and for a new trial of said issues; because the court erred in giving improper instructions asked by the plaintiffs, and in refusing proper instructions asked by defendant, and because the court erred in admitting improper evidence offered by the plaintiffs, and in refusing proper evidence offered by defendant, and because the court erred in recalling the jury on its own motion and giving them an additional and improper instruction in the presence of the attorneys for both parties and without any request from said jury for further instructions in the premises. Which motion was, by the court, overruled, and the defendant Smith excepted. The defendant also, on same day, filed a motion in arrest, which was also overruled by the court, and the defendant excepted. Thereupon on the same day, said cause coming on for trial, and the defendants failing to appear and plead, answer or demur to the plaintiffs' petition in the cause, the same is taken as confessed, and the court found the issues for the plaintiffs, and that defendants were indebted to plaintiffs in the sum of $834, and thereupon the court rendered a final judgment that plaintiffs have and recover of defendants said sum of $834, with costs of suit, and further ordered and adjudged that the attached property be sold to satisfy said judgment, or so much thereof as may be necessary; and if the same be not sufficient, the remainder to be levied of any other property of defendants. And afterward at the same term said defendant Smith filed his bill of exceptions, affidavit and bond, and brings the cause by appeal to this court.

This record shows that the affidavit on which this attachment was sued out, contains three branches : 1st, That the defendant Smith, at the date thereof, was about to remove his property and effects   *   *   out of the State with intent to defraud, hinder or delay his creditors, etc.

2nd, That said Smith was about fraudulently to convey and assign his property and effects   *   *   so as to hinder and delay his creditors, etc.   3rd, That said Smith   *   *   has fraudulently removed and disposed of and is about to dispose of his property   *   *   so as to hinder and delay his creditors, etc.

In the statement and brief of counsel for respondent it is not claimed that any evidence was offered on the trial of said issues that defendant was about to remove his property out of the State, as charged in the first branch of the affidavit; nor is it pretended that he was then about to convey or assign his property and effects, as charged in the second branch of the affidavit; but it is insisted that he had, in point of fact, fraudulently disposed of his property and effects so as to hinder and delay his creditors; and that said mortgage is a disposal of property within the meaning of the third branch of said affidavit; and that the same is admissible in evidence under the issues arising on that branch of the affidavit.  Said counsel also contends that "the action of the court in recalling the jury and instructing them that the mortgage was fraudulent on its face disposes of the necessity of considering the correctness of its other rulings, to which exceptions were taken. For if said mortgage is fraudulent and void in law, the plaintiffs' attachment was sustained, and they were entitled to a verdict accordingly."

On the contrary, the appellant insists that the mortgage in question is a "conveyance of property within the meaning of the 7th subdivision of section 398 of the attachment law, and that if fraudulent, it is thereby made a separate, distinct and independent cause of attachment within the meaning of said 7th subdivision; and that it is not a disposition of property within the purview of the 8th subdivision of said section, or admissible in evidence under issues arising on that subdivision.  The appellant further insists that the court, by its instructions and rulings touching said mortgage, presented and submitted to the jury for trial

Bullene v. Smith.

other and different issues than those made by the affidavit and plea in abatement, and thereby committed error."

A brief reference to some of the provisions of our attachment law may throw some light on the nature and character of the issues thus made by the affidavit and plea in abatement, and conduce to show the proper practice and rules to be observed in the conduct of the trial of said issues; and thus indicate how far and to what extent such issues and trials are assimilated to the more formal issues and trials of the main cause set out and contained in the petition and answer. In ordinary cases no rule of law or practice is better settled than that which requires the plaintiff to set out in his petition the facts constituting the cause of his action. This rule is not more firmly established than that other rule which disables him at the trial from proving and recovering upon another and distinct cause of action not embraced in his petition. The justice and propriety of these rules are not questioned, when applied to the pleadings, practice and issues in ordinary suits conducted by the ordinary forms and process of law. Can there be any just reason why they should not and do not obtain with equal, if not greater, force when resort is had to the harsh and extraordinary process of attachment, by which the defendant's property is liable to be seized and taken from him, in advance of the establishment of the justice of the claim on which he is sued?

The law, in its wisdom, has provided the means, as far as possible, for the prevention and suppression of all fraudulent practices and contrivances by which the dishonest seek to avoid their just debts, or to withdraw their property and means from the honest claims of creditors. But at the same time it has wisely imposed such limitations and restrictions upon the use of those means as may protect the debtor from unjust and arbitrary seizures of his property, and at the same time notify him with reasonable certainty of what he is charged; and what particular fact or facts

confer upon his creditor the right to call for and demand this extreme and severe remedy.

Out attachment law has pointed out, with great clearness, in what cases this process may be resorted to by the creditor; and in order that he might know when and under what circumstances he might call for the strong arm of the law, it has specified what fact, conduct or transaction connected with or on the part of his debtor subjects him to be thus sued. The various causes which entitle him to sue by attachment are set forth in the several subdivisions of section 398; and the existence of any one or more of them may be made the basis of an affidavit which authorizes the writ. This affidavit and the cause or causes therein stated constitute and limit his right to the process. It takes the place and performs the office of a petition, and its different branches in some sense may be likened to different counts setting up and limiting different and distinct causes for the attachment. The plea in abatement is the defendant's answer. Upon the issues thus formed, the plaintiff is held to the proof of the existence of the facts alleged by him as the ground of the attachment. In this there is no hardship. He has deliberately chosen the grounds of his attachment, and must abide the result of the issues thus tendered. On these issues thus formed by the affidavit and plea in abatement the pleadings are more simple, it is true, but the same rules of fairness and justice govern to this extent at least as obtain on the trial of the more formal issues arising on the petition and answer in the main cause, in aid of which these subordinate pleadings and issues are allowed. The legislature, by the specifications and classifications contained in the various subdivisions of section 398, has, we think, made the several subdivisions and the cause or causes therein contained separate, distinct and independent causes of attachment; no two of which cover in legal contemplation the same subject matter, fact, conduct or transaction. If this be so, the mortgage, being a conveyance of property within the meaning of the 7th

subdivision, is not a disposition of property within the pur-
view of the 8th subdivision or admissible in evidence under
issues arising on the latter subdivision.

But it is insisted that the word *disposed*, as used in the
latter subdivision, is a generic term, broad and comprehen-
sive enough to embrace any and all alienations of property
of whatever description and by whatever mode or manner
the same may or can be transferred, whether by writing or
otherwise. Is this position tenable? We think not. If
tenable, what is the use of specifying, defining or pointing
out the other modes of transfer and alienation contained in
this statute? Why multiply distinctions without a differ-
ence? Is the term " disposed," as here used, broad and wide
enough to cover and embrace this mortgage? Or is it just
broad and wide enough to cover and embrace any and all
dispositions of property not otherwise provided for by other
specific subdivisions applicable to particular modes of trans-
fer and alienation as set out in this statute? The word " dis-
posed," as used in this subdivision of the statute was, we
think, intended to cover and does cover all such alienations
of property as may be made in ways not otherwise pointed
out in the statute; for example, such as pledges, gifts,
pawns, bailments and other transfers and alienations as
may be effected by mere delivery, and without the use of
any writing, assignment or conveyance. Any and all these
transfers and alienations of property thus made, if done
to hinder or delay creditors, are fraudulent and void within
the meaning of the term " disposed," as used in this sub-
division. Pledges, pawns and bailments of personal prop-
erty for some debt or engagement are of common and
frequent occurrence, and usually effected by mere delivery.
They may be and usually are honest transactions, but fraud
has often resorted to this mode of covering up its property
from creditors; and when thus attempted, it is a fraudu-
lent disposition of property within the meaning and im-
port of the term as used in this 8th subdivision.

In the case of *Field v. Liverman*, 17 Mo. 218, this court

uses this language: "It is a fraudulent disposition of property, within the meaning of the attachment law, for a person to confess a judgment with intent to hinder and delay his creditors by having his property held up under an execution issued upon the judgment. Where the plaintiff in an execution directs a sheriff to suspend a levy until further orders, and keeps it suspended until crowded by younger executions or attachments, his execution will be held constructively fraudulent as against such subsequent executions or attachments." This illustrates one of the instances in which property was disposed of in the sense of the attachment law. But we think it is hardly necessary to extend this argument to show that the word " disposed," as here used, may have ample scope and effect without trenching on other terms used in other subdivisions of this act.

If we are correct in this view of the attachment law, it follows that the court, by its instructions and rulings touching said mortgage, presented and submitted to the jury for trial, an issue other and different from that made by the affidavit and plea in abatement. That this was error, is fully settled by numerous decisions of this court heretofore made involving kindred questions of pleading and practice. *Waldhier v. Hannibal & St. Joseph R. R. Co.*, 71 Mo. 514; *Price v. St. Louis, Kansas City & Northern Ry. Co.*, 72 Mo. 414; *Edens v. Hannibal & St. Joseph R. R. Co.*, 72 Mo. 212; *Buffington v. Atlantic & Pacific R. R. Co.*, 64 Mo. 246. As this disposes of the case, we deem it unnecessary to consider other minor objections suggested in the appellant's brief. For the reasons above, the judgment is reversed and the cause remanded. All concur.