UNITED STATES *v.* WILLIAMS and others, (No. 932.)

UNITED STATES *v.* WILLIAMS and another, (No. 933.)

*(Circuit Court, D. Oregon.* November 23, 1883.)

1. CUTTING TIMBER ON THE PUBLIC LANDS.

Section 4 of the act of June 3, 1878, (20 St. 89,) prohibits the cutting of any timber on the public lands with intent to dispose of the same; but the proviso thereto permits a settler under the pre-emption and homestead acts to clear his claim as fast as the same is put under cultivation, and the timber cut in the course of such clearing may be disposed of by the settler to the best advantage.

2. SAME.

But if such settler cuts timber on his claim with the intent to dispose of the same, and not merely as a means of preparing the land for tillage, he is a willful trespasser, and is liable accordingly.

3. DAMAGES FOR CUTTING TIMBER.

The measure of damages in an action for cutting timber on the public lands, in case the trespass is inadvertent and not willful, is the value of the timber in the tree; but where the trespass is willful, the value of the labor put upon it by the trespasser must be added to the value in the tree, with interest thereon in either case.

4. TRESPASS BY MISTAKE.

The defendant claimed to have taken up a homestead on the north-west quarter of section 22, of township 19, and, while intending to cut saw-logs thereon, with intent to dispose of the same, did, by mistake, cut said logs on

the north-east quarter of said section. *Held*, that if the defendant had cut the logs on the north-west quarter, as he intended, it would have been a willful trespass, and therefore his mistake was immaterial, and he was liable to the United States for the value of said logs as a willful trespasser.

Action for Damages for cutting timber on the public land.

*James F. Watson*, for plaintiff.

*Rufus Mallory*, for defendants.

DEADY, J.   These actions are brought by the United States against the defendants to recover the value of certain timber unlawfully cut, and removed from the public lands to a certain saw-mill, in Springfield, Lane county, Oregon, and there sawed into boards and converted to the use of the defendants, to the damage of the plaintiff in the first case in the sum of $9,000, and in the second one of $6,000. In No. 932 it is alleged in the complaint that between April 1 and July 13, 1883, there was cut and removed by the defendants therein, from what would be, if surveyed, the N. E. ¼ of section 22, in township 19 S., of range 1 W. of the Wallamet meridian, 900,000 feet of timber, of the value of $1,800; and in No. 933, between April 1, 1882, and July 13, 1883, there was cut and removed from the same tract 600,-000 feet of timber, of the value of $2,000.   The defendants Charles and William Williams, in case 932, answered jointly, admitting the cutting and removing by them to said saw-mill, as alleged, of 200,000 feet of timber; and said Charles, in case 933, answered, admitting the cutting and removing of 600,000 feet by him; and alleging in both cases that such cutting and removing were done by mistake as to the locality of said timber; that it was only worth 25 cents a thousand feet in the tree; and they bring into court in satisfaction of the demages thereby sustained by the plaintiff the sum of $50 in the one case, and $150 in the other.   The defendant Pengra answered separately, denying the allegations of the complaint, and the actions were dismissed as to him.   The cases were afterwards submitted to the court for trial, without a jury, upon an agreed statement of the facts or evidence in the case.

From this statement it appears that section 23 of said township is unsurveyed, but it has not been public land since prior to 1881, and that at the time the defendants cut the timber on section 22 of said township they had authority to cut and remove timber from said section 23; that said section 22 is public land, the west half of which was surveyed before this timber was cut thereon, and the line on the north side thereof was run between it and section 15, and sections 23 and 14; that on May 1, 1882, Charles Williams was and still is the owner of a tract of land—the quantity of which is not stated—adjoining the north-west quarter of said section 22, and that in said month of May said Charles "took up a homestead claim" thereon, as he supposed, but which was, in fact, on the north-west quarter of said section; that said north-west quarter section and the land so taken for a homestead were fit for tillage when the timber

was removed, and said Charles took the latter "for the purpose of preparing the same for tillage, and for that purpose removed therefrom, in the spring and summer of 1882, 600,000 feet of timber, in good faith, for the purpose of preparing said land for tillage," and in neither case was said timber cut with any intention of trespassing on the public lands or taking timber therefrom unlawfully; and that all of said timber was cut into logs on the land, and was worth 25 cents a thousand in the tree, and 75 cents a thousand in the log, and no more.

Under the timber act of March 2, 1831, (4 St. 472; section 2461 Rev. St.,) the cutting or removal of any timber from the public lands, other than for the use of the United States, was absolutely prohibited, under a penalty of not less than three times the value of the timber and imprisonment not exceeding 12 months. But the courts treated the pre-emption, homestead, and mining acts subsequently passed as laws upon the same subject, by which the timber act was modified so as to permit the occupants of the public lands under these several acts to cut and remove timber therefrom for the purposes for which they were thus occupied, but not otherwise. And the timber so cut might be disposed of rather than destroyed. *U. S.* v. *Nelson,* 5 Sawy. 68.

On June 3, 1878, congress passed a special timber act (20 St. 89) for the Pacific states. The first three sections of this act provide for the sale of the unsurveyed public lands valuable chiefly for timber, but unfit for cultivation. Section 4 provides "that after the passage of this act it shall be unlawful to cut, or cause or procure to be cut, or wantonly destroy, any timber growing on any land of the United States" in said states, "or remove, or cause to be removed, any timber from such public lands with intent to export or dispose of the same," under pain of punishment as therein provided; with a proviso that nothing therein contained "shall prevent any miner or agriculturist from clearing his land in the ordinary working of his mining claim or preparing his farm for tillage, or from taking the timber necessary to support his improvements.  *  *  *"

This proviso does not apply to any but lawful settlers on the public lands under the pre-emption, homestead, or mining acts with the intention of acquiring the title thereto. By this proviso, congress in effect declared, as the courts had held, that notwithstanding the general prohibition against cutting timber on the public lands, such settlers might cut timber thereon in the ordinary course of working a mine or preparing a farm for tillage. But in either case the cutting of the timber must be subordinate, if not merely incidental, to the mining or cultivation. The latter must not be used as a cloak or pretext for the former. *U. S.* v. *Smith,* 8 Sawy. 107; [S. C. 11 FED. REP. 487.]

The proviso does not license the cutting of timber for the purpose or with the intention of disposing of the same. The section expressly

forbids this, and the proviso does not allow it. A mere settler on the public lands has no right, as such, to cut timber thereon for the purpose of disposing of it by sale or otherwise. And yet I think the act of 1878 ought to be construed as authorizing a settler to dispose of timber which he cuts in good faith for the purpose of clearing his land for present cultivation. Whatever timber it is necessary to cut to prepare the land for tillage, the settler ought to be allowed to dispose of to the most advantage to himself—to sell it rather than destroy it. But this is a privilege easily abused, and the temptation to do so is very strong. Therefore it ought not to be allowed except upon clear proof that the tillage or cultivation has kept pace, acre by acre or field by field, with the cutting and removal. Otherwise the public lands will soon be pillaged of their valuable timber by the contractors and employes of mill-men, working under the guise of preemptors and homesteaders, preparing their so-called "farms for tillage." But "tillage" means husbandry—the cultivation of the land, particularly by the plow.

In *Wooden-ware Co.* v. *U. S.* 106 U. S. 432, [S. C. 1 Sup. Ct. Rep. 398,] it was held by the supreme court that in an action to recover damages for cutting and carrying away timber from the public lands, the rule for assessing them is as follows: (1) When the defendant is a willful trespasser, the full value of the property at the time of bringing the action, with no deduction for his labor and expense; (2) when the defendant is an unintentional or mistaken trespasser, the value at the time of the conversion, less the amount which such trespasser has added to its value.

It is admitted that the timber in question was cut and removed from the public lands unlawfully. But it is claimed that the trespass was not willful, but the result of a mistake, and therefore the damage ought to be confined to the value of the timber in the tree.

On the argument it was practically admitted by the counsel for the plaintiff that the timber cut by the defendants in the summer of 1881 was cut by mistake. But it is not apparent how the mistake was made; nor is it shown that any pains or care was taken to prevent or avoid the mistake. If the mistake was the result of carelessness or indifference, I do not think it is such a mistake as ought to excuse the defendants from paying damages as willful trespassers. *Winchester* v. *Craig*, 33 Mich. 207.

But the claiming that this 200,000 feet of timber was cut by mistake is not contested by the counsel for the plaintiff, and the finding of the court will be that the plaintiff is entitled to recover $50 damages on that account, with interest from December 31, 1881. The 600,000 feet cut upon the same tract in the summer of 1882 by the defendant George Williams was also cut by mistake; that is, it was cut upon the N. E. $\frac{1}{4}$ of section 22, instead of the north-west one, where it is stated he intended to "take up" a homestead in May of that year. Leaving out of consideration the fact that more or less

of this timber was cut, probably a month before this homestead is alleged to have been taken, the district attorney insists that there is no such mistake or inadvertence in the case as will excuse the defendant from the consequences of a willful trespass.

There is no fact or circumstance in the case tending to show that the defendant ever attempted in good faith to make a farm on either the north-east or west quarter section. Incidentally it is mentioned in the statement of facts that he built a house on the north-east quarter, but for aught that appears it was a mere loggers' hut. There is no evidence of residence or cultivation, or even intent to do so. The land was surveyed, but the defendant does not appear to have made any application or filed any statement in the land-office evidencing his intention to make a homestead thereon. In short, nothing was done on either quarter section but what is consistent with the idea that the defendant was upon the land simply as a logger, engaged in getting out logs for the Springfield saw-mill.

But admitting that the defendant was actually on the north-west quarter for the purpose of claiming it as a homestead, that fact did not entitle him to cut the timber from it with intent to dispose of the same, or otherwise, only so fast and far as he put the land in cultivation. It is not practicable to lay down any absolute rule as to how near the cultivation shall keep to the clearing,—how close the plow shall follow the axe,—but it is clear that whoever cuts timber on the public lands and removes it therefrom or disposes of it, must be prepared to show that he is a lawful settler thereon, and that the timber was cut for the purpose of clearing and cultivating the land, and not otherwise. And in case the timber is sold or otherwise disposed of for gain, the further the clearing is ahead of the cultivation, the stronger is the presumption that it was cut with such intent, and not to prepare the land for tillage.

If the defendant, then, had cut this timber upon his alleged homestead, it would, under the circumstances, have been a willful trespass. His mistake is immaterial. It only amounts to this: that whereas he intended to trespass upon the north-west quarter, he inadvertently got over the line and trespassed upon the north-east quarter. But it is claimed that the defendant acted in good faith; and it is so admitted in the statement. This is relied upon by counsel to repel the inference from the circumstances that the defendant was a willful trespasser. But this general statement of good faith is necessarily qualified by the admitted facts of the case. Judged by these, it may be admitted that the defendant so far acted in good faith that when he was cutting on one quarter he thought he was cutting on the other. And this is probably as far as it was intended to go. But the facts of the case prevent the conclusion that he could have honestly believed that he was entitled to cut timber for sale on either quarter. The timber on these lands probably constitutes their chief value. Ample provision is made for their sale to those who want to purchase

them, and also for the use of the timber by the miner and agriculturist who settle upon them for these purposes. But the liberality of the government in this respect ought not to be used to screen those lawless depredators who go upon the public land in the guise of settlers, and then cut and remove the timber therefrom upon the pretense of preparing it for "tillage." *Wooden-ware Co.* v. *U. S., supra,* 437.

The finding in this case will be that the plaintiff is entitled to recover the value of the timber after it was cut into logs,—$450, with interest from December 31, 1882,—and if the case stated had gone as far as it might, and probably ought, the measure of damages would have been the value of the logs when delivered at the saw-mill in Springfield.