### UNITED STATES v. HACKER.

(District Court, S. D. California. March 9, 1896.)

TIMBER LANDS—CUTTING—INTENT—ACT OF JUNE 3, 1878.

The clause specifying intent, in section 4 of the act of June 3, 1878 (1 Supp. Rev. St. 168), which declares it unlawful "to cut, or cause or procure to be cut, or wantonly destroy, any timber growing on any lands of the United States, * * * or remove or cause to be removed any timber from said public lands, with intent to export or dispose of the same," qualifies the cutting as well as the removal of timber; and an indictment for cutting timber on the public lands specified in the act, which does not allege that the defendant intended to export or dispose of the timber so cut, is fatally defective.

The District Attorney, for the United States.
Murphey & Gottschalk, for defendant.

WELLBORN, District Judge. This prosecution is for an alleged violation of section 4 of an act of congress entitled "An act for the sale of timber lands in the states of California, Oregon, Nevada and in Washington Territory," approved June 3, 1878 (1 Supp. Rev. St. 168). The indictment alleges that the defendant cut timber on certain public lands, but does not allege that he intended to export or dispose of the timber so cut; and the question raised by the demurrer is whether or not such an intent is an essential ingredient of the offense, denounced in said section, of cutting timber on lands of the United States. The section is as follows:

"Sec. 4. That after the passage of this act it shall be unlawful to cut, or cause or procure to be cut, or wantonly destroy, any timber growing on any lands of the United States, in said states and territory, or remove, or cause to be removed, any timber from said public lands, with intent to export or dispose of the same; and no owner, master, or consignee of any vessel, or owner, director, or agent of any railroad, shall knowingly transport the same, or any lumber manufactured therefrom; and any person violating the provisions of this section shall be guilty of a misdemeanor, and, on conviction, shall be fined

for every such offense a sum not less than one hundred nor more than one thousand dollars: provided, that nothing herein contained shall prevent any miner or agriculturist from clearing his land in the ordinary working of his mining claim, or preparing his farm for tillage, or from taking the timber necessary to support his improvements, or the taking of timber for the use of the United States; and the penalties herein provided shall not take effect until ninety days after the passage of this act."

The government contends that the words in said section, "with intent to export or dispose of the same," qualify only the removal, and not the cutting, of timber. This construction, it seems to me, does not find support either in the grammatical arrangement of the section or in the policy of the law which prompted its enactment. It is true, as claimed by the government, that the overt acts to which the section relates are three,—the cutting of timber, the destruction of timber, and the removal of timber; and that the statement of the intent to export or dispose of the timber concludes the enumeration of all of these acts; and also it may be conceded that an intent to dispose of timber is wholly inconsistent with its "wanton" destruction. Yet it does not follow that the words, "with intent to export or dispose of the same," qualify only one of the other two overt acts. Even from a grammatical point of view, it is more reasonable to apply the qualification to both of the acts with which it is consistent, and to withhold it only from that one to which, in the nature of things, it is inapplicable. The correctness of this view is made manifest by transposing the words "wanton destruction" so as to insert them immediately after the word "unlawful." The section would then read as follows:

"That after the passage of this act it shall be unlawful to wantonly destroy, cut or cause or procure to be cut, any timber growing on any lands of the United States, in said states and territory, or remove, or cause to be removed, any timber from said public lands, with intent to export or dispose of the same," etc.

Nor is the proviso to the section inconsistent with this interpretation. This proviso is, as I view it, a specification of the purposes for which timber may be lawfully cut or removed, and expressly legalizes some acts, both of removal and cutting, which would otherwise be forbidden by the body of the act. The government, however, contends that the proviso relates only to the cutting of timber, and that upon the principle, "the expression of one thing is the exclusion of another," the words, "with intent to export or dispose of the same," in the body of the act, are, in effect, simply an abbreviation of what is detailed in the proviso; and, therefore, to hold that said words relate also to the cutting of timber, makes the proviso superfluous, whereas, if the requirement as to intent be limited to the removal of timber, not only is the act harmonious, but every part thereof, including the proviso, operative. The government's argument on this point is as follows:

"Second. The construction claimed for the act by defendant renders unnecessary and superfluous the proviso contained in section 4 of the act, which declares, substantially, that it shall not be unlawful for any miner or agriculturist (1) to clear his land in the ordinary working of his mining claim, or (2) to prepare his land for tillage, or (3) to take the timber necessary to support his improvements. No one of these three acts involves a removal of the tim-

ber from off the land of the miner or agriculturist. Each of said three acts,
however, does involve a cutting of timber, but the cutting so involved does not
involve an exporting of the timber, or a disposition thereof. The word 'ex-
port,' as used in this act, probably has a broader meaning than that usually
given to it when it is used to denote a taking out of the country to some foreign
port or place. It probably means any removal from the state wherein the land
is situated. The word 'dispose' is used in connection with the word 'export,'
and should therefore be construed according to the maxim 'noscitur a socius.'
When thus construed, it does not mean simply to put in place, arrange, or man-
age; it means, in this connection, to alienate, sell, or transfer. 'Dispose of;
to alienate; to effectually transfer.' 5 Am. & Eng. Enc. Law, p. 703. 'If not
always synonymous with, it is akin to, the word "sell." ' Taylor v. Kymer, 3
Barn. & Adol. 320. If it is not an offense to cut timber upon public lands of the
United States, in the states mentioned in the act, unless the cutting be coupled
with an intent to remove the timber from the land, or to sell, transfer, or alienate
it, it would constitute no offense if a miner or agriculturist should cut timber
for the purpose of clearing his land in the ordinary working of his mining claim,
or for the purpose of preparing his farm for tillage, or for the purpose of taking
the timber necessary to support his improvements, and there would, therefore,
be no necessity for the proviso in section 4. But that construction should be
avoided which renders a part of the act superfluous and useless."

Conceding that this extract correctly defines the words "export"
and "dispose of," still the argument is fatally vulnerable, and its in-
firmity lies in the assumption that the proviso relates only to the
cutting of timber, not its removal. By this proviso, as analyzed in
the foregoing extract from the government's brief, the lawful acts
of a miner and agriculturist, so far as concerns timber on public
land, are as follows: "(1) To clear his land in the ordinary work-
ing of his mining claim, or (2) to prepare his farm for tillage, or (3)
to take the timber necessary to support his improvements." After
making this analysis, it will be observed, the brief proceeds to
assume that "no one of these three acts involves a removal of the
timber from off the land of the miner or agriculturist. Each of
said three acts, however, does involve a cutting of timber, but the
cutting so involved does not involve an exporting of the timber,
or a disposition thereof." This assumption, it seems to me, is
erroneous. While it is true that neither of said acts necessarily
involves the sale of timber, or its removal from the land where cut,
it is equally true that all of them may involve both removal and sale.
For instance, if the agriculturist clears his land for tillage, and
thus cuts more timber than is necessary to support his improvements,
he may lawfully sell the surplus. The Timber Cases, 11 Fed. 81;
U. S. v. Williams, 18 Fed. 478. In the former of these cases the
court says:

"The timber standing on the land intended for cultivation the claimant may
cut, and, after applying such portion as can be used and is needed for the im-
provement for that purpose, he may sell or dispose of the balance to the best
advantage. The law is not so unreasonable as to require timber which has to
be removed for the purpose of cultivation to be burned or otherwise wasted,
but will allow the pre-emptor to have the benefit of it, to aid him in accomplish-
ing the design of the law."

In the case last cited (U. S. v. Williams, supra), at page 478, the
court says:

"And yet I think the act of 1878 ought to be construed as authorizing a set-
tler to dispose of timber which he cuts in good faith for the purpose of clearing

his land for present cultivation. Whatever timber it is necessary to cut to prepare the land for tillage, the settler ought to be allowed to dispose of to the most advantage to himself,—to sell it rather than destroy it."

So that the cutting of timber for tillage, made lawful by the proviso, may involve either its removal or sale or both.

Thus it will be seen that the proviso does relate to the removal, as well as the cutting, of timber; and I am satisfied the words, "with intent to export or dispose of the same," also qualify both the cutting and removal of timber. Nor does this interpretation render the proviso useless, but, as is apparent from what has already been said, the proviso subserves an important end. It limits the scope of the words, "with intent to export or dispose of the same," by making it lawful for a homestead settler to cut timber, even though he intend at the time to sell it, provided the cutting be done in the necessary preparation of the land for tillage.

The above interpretation is further strengthened by a consideration of the object for which the law was passed. The policy of the government in this and kindred legislation was to protect the timber on the public domain, except as against certain necessary and specified uses in tillage and mining. Besides these uses, recognized as lawful, there was but one other purpose for which timber on public lands was likely to be taken, namely, its sale. Here was the menace, and, except as below indicated, the only menace, to timber on the public domain. In some localities the lands of the government were being denuded of their growing trees, not for occupancy and improvement, but solely for exportation and sale of the timber. This was the mischief, and, outside of wanton destruction, the only mischief, present to the mind of congress, and against which the section in question was designed to afford a remedy. The structure of the section, and the whole course of legislation on the subject to which it relates, satisfies me that the words, "with intent to export or dispose of the same," relate to the cutting, as well as the removal, of timber. This conclusion is approved by decisions in at least two cases, where the section in controversy has been examined. U. S. v. Childers, 12 Fed. 586; U. S. v. Williams, 18 Fed. 475. In the first of these two cases occurs this paragraph:

"The premises upon which the defendant cut the timber in question being a part of these unearned lands, he is guilty of violating section 4 of the act of June 3, 1878 (20 Stat. 90), which enacts that any person who shall unlawfully cut any timber growing on any land of the United States in Oregon, with intent to export or dispose of the same, shall be guilty of a misdemeanor, and, on conviction thereof, fined not less than $100 or more than $1,000." 12 Fed., at page 589.

In the latter of the two cases the first paragraph of the syllabus is as follows:

"(1) Cutting Timber on the Public Lands. Section 4 of the act of June 3, 1878 (20 Stat. 89), prohibits the cutting of any timber on the public lands with intent to dispose of the same; but the proviso thereto permits a settler under the pre-emption and homestead acts to clear his claim as fast as the same is put under cultivation, and the timber cut in the course of such clearing may be disposed of by the settler to the best advantage." 18 Fed., at page 475.

In the body of the opinion, at page 477, occurs the following:

"The proviso does not license the cutting of timber for the purpose or with the intention of disposing of the same. The section expressly forbids this, and the proviso does not allow it. A mere settler on the public lands has no right, as such, to cut timber thereon for the purpose of disposing of it by sale or otherwise."

It is true that the precise point now under consideration was not necessarily involved in either one of the two cases cited, but the section in question was critically examined in both, and therefore the opinions are strongly persuasive, although probably not entitled to the same weight they would receive had the point been an essential one.    The same may be said of the cases of U. S. v. Garretson, 42 Fed. 22, and Leatherbury v. U. S., 32 Fed. 780, with the qualification that, while these cases arose under section 2461, Rev. St. U. S., yet that part of the section construed is substantially the same as the corresponding part of the act of June 3, 1878, now under discussion.

My opinion is, that the indictment is defective, because of its failure to allege that the timber was cut with intent to export or dispose of the same.    The demurrer is sustained.