J. M. CAREY and BROTHER, a Corporation, JOSEPH M. CAREY, ELIZABETH CAREY BREWSTER, CARL B. AXT, LOUISE CAREY BON, and JULIA F. CAREY, Statutory Trustees of J. M. Carey and Brother.

*Plaintiffs and Appellants,*

vs.

CITY OF CASPER, a Municipal Corporation,
*Defendant and Respondent.*

(No. 2445; January 3rd, 1950; 213 Pac. (2d) 263)

438

For plaintiffs and appellants the cause was submitted on the brief of Ellery and McClintock of Cheyenne, Wyoming and oral argument by Mr. Ellery.

For defendant and respondent the cause was submitted on the brief of Marvin L. Bishop and J. F. Mahoney of Casper, Wyoming and oral argument by Mr. Bishop.

## OPINION.

RINER, Chief Justice.

The District Court of Natrona County sustained a general demurrer interposed by the defendant and respondent to a second amended petition filed by plaintiffs and appellants, this pleading in said district court being entitled Joseph M. Carey, Elizabeth Carey Brewster, Louise Carey Bon and Julia F. Carey, Statutory Trustees of J. M. Carey and Brother, a Corporation, plaintiffs vs. City of Casper, a Municipal Corporation, defendant. For convenience and brevity the "defend-

ant" will hereinafter be designated so or as the "City" and the other parties litigant usually as either the "plaintiffs" or the "Trustees."

In order to understand the contentions made by the parties to this direct appeal proceeding the material and pertinent portions of the second amended petition of plaintiffs are substantially set forth as follows:

After alleging the existence of the defendant as a municipal corporation of Natrona County, Wyoming, organized under the laws of this state, it is stated that at all times herein mentioned until September 5, 1941 J. M. Carey and Brother was a Wyoming corporation; that on the date last mentioned this corporation was dissolved having at that time the plaintiffs including one Karl B. Axt, now deceased, as its Board of Trustees who now are, under Wyoming law, the "duly qualified and acting statutory trustees of said J. M. Carey and Brother."

It is then alleged that on June 27, 1918 the corporation last named being at that time the owner in fee simple of Block 32 in the Town of Casper, Natrona County, Wyoming, conveyed said premises for a nominal consideration only to the defendant by "good and sufficient warranty deed" recorded at page 463 of Book 20 of the records of the Natrona County Clerk, a copy of said deed being attached as "Exhibit A" and made a part of plaintiffs' pleading.

Omitting signatures and acknowledgement the material parts of this deed are: J. M. Carey & Brother as a Wyoming corporation and party of the first part on June 27, 1918 for the consideration of one dollar "Granted, bargained, sold, and conveyed" to the City of Casper, a Wyoming municipal corporation of Natrona County, as party of the second part, and "unto its successors and assigns forever" all of Block num-

bered 32 in the Town of Casper, county and state afore-
said as that block is described on the plats of said town
and additions thereto on file in the office of the County
Clerk of said Natrona County. The remaining portion
of this deed omitting the attestation paragraph is ver-
batim as follows:

"TO HAVE AND TO HOLD the said above granted
premises unto said party of the second part, its suc-
cessors and assigns FOREVER, together with the priv-
ileges, hereditaments, tenements and appurtenances
thereunto in any wise appertaining or belonging.

"And the said party of the first part, for itself, its
successors and assigns, covenants and agrees, to and
with the said party of the second part, its successors
and assigns, that at the ensealing and delivery of these
presents it is well seized in the said premises, in and of
a good and indefeasible estate, in fee simple.

"And that they are free from all incumbrances what-
soever, excepting however any taxes or assessments
levied on said premises since January 1st, 1918.

"And that it has good and lawful right to sell and con-
vey the same. And the said party of the first part will
and its successors and assigns shall forever WAR-
RANT AND DEFEND the same against all lawful
claims and demands whatsoever.

"And the said party of the first part, for itself, its
successors and assigns, covenants and agrees to and
with the said party of the second part, its successors
and assigns, that it, the said party of the second part
shall and may lawfully at all times hereafter peaceably
have, occupy, possess and enjoy the said premises
hereby granted, or intended so to be, with the appurt-
enances without the lawful hindrance or molestation
of the party of the first part, its successors or assigns,
or any person or persons whatsoever, by or with their
consent, privity or procurement.

"Provided, HOWEVER, that said property hereinbe-
fore described is granted to said party of the second
part, its successors and assigns, upon the express con-

dition that a City Hall building for said City of Casper suitable for the needs of said City of Casper and with such changes and additions as may from time to time become necessary, is to be erected thereon within a reasonable length of time not exceeding three (3) years from the date of this instrument, and that said Block is to be used thereafter for the maintenance thereon of such City Hall for said City of Casper and also for the maintenance of a Public Park and for no other purposes.

"IT IS AGREED, By the parties hereto that in case said described property is disposed of for any other purposes than those stipulated above or if said City Hall building is not erected thereon within the period heretobefore stipulated, then and in such case, title to said described property shall revert to said party of the first part, its successors or assigns."

The paragraphs in said deed commencing "Provided, HOWEVER," and "IT IS AGREED" are in said pleading stated to be "a condition subsequent providing for the reverter of said premises to said J. M. Carey and Brother, a corporation."

It is also alleged that the defendant constructed a City Hall upon said premises in accordance with the terms and conditions of said deed and used same for that purpose until about the year 1940. This statement is followed by the averment that on July 26, 1938 the said corporation, J. M. Carey and Brother at the request of the defendant for the purpose of permitting certain additional uses therein specified and no others of said Block 32 entered into an agreement with defendant a copy of which is attached as "Exhibit B" and made a part of plaintiffs' pleading, it being also alleged that the condition subsequent aforesaid was modified and amended by the terms of said agreement.

This agreement, plaintiff's "Exhibit B", made between the same parties to the deed described above, the corporation, J. M. Carey and Brother as party of

the first part, and the City aforesaid as second party, omitting attestation paragraph, signatures and acknowledgments, contains certain preliminary recitals, viz., the fact of the execution and delivery of the warranty deed above mentioned and "WHEREAS said warranty deed contains the following *covenants;*" (here are inserted verbatim the two paragraphs in said deed commencing "Provided, HOWEVER", and "IT IS AGREED" quoted above), the remaining recitals and the terms of the modified agreement being set forth verbatim in this language (Italics supplied):

"WHEREAS, prior to the expiration of three years from the date of said warranty deed the City of Casper constructed upon said premises a City Hall building for said City of Casper suitable for the needs of said City, and has heretobefore continuously maintained such building thereon, and said premises heretofore have been and now are used exclusively for the maintenance thereon of said City Hall building, and also for the maintenance of a public park, and for no other purposes, and

"WHEREAS, said City of Casper has not disposed of said premises or any part thereof, and title to same, as conveyed to it by said warranty deed, still rests in said City of Casper, and

"WHEREAS, it may be desired hereafter to construct and maintain upon said premises a City-County Building for the use jointly of the City of Casper and of Natrona County, State of Wyoming, or a Court house and jail building for the use of Natrona County, Wyoming.

"NOW, THEREFORE, in consideration of the premises and for good and valuable considerations paid by party of the second part to party of the first part, receipt and sufficiency of which are hereby acknowledged, the party of the first part does hereby covenant, consent and agree that the *covenants* contained in said warranty deed of June 27th, 1918, hereinabove set forth shall be amended and modified by the substitution therefore of the following, to-wit:

" 'Provided, that said real property particularly described as Block Numbered Thirty-two in the Town (now City) of Casper, Natrona County, Wyoming, shall be used for the maintenance thereon of a City Hall building suitable for the needs of said City of Casper, or for the construction and maintenance thereon of a City-County building suitable for the needs of and to be used jointly by the City of Casper, a municipal corporation, located in Natrona County, Wyoming, and maintenance thereon of a Court house and jail building suitable for the needs of and to be used by Natrona County, Wyoming, or for public park purposes, and for no other purpose whatsoever, the restrictions herein expressed to apply particularly to the use of said premises by any department of the State of Wyoming or of the United States; providing that in the event of the proposed construction upon said premises of a City-County building for the use of the City of Casper and Natrona County, Wyoming, or of a Court house and jail building for the use of Natrona County, Wyoming, the said City of Casper may transfer and convey said premises to Natrona County, Wyoming, subject to the restrictions as to use of said premises herein contained. It is further agreed that in the event said property, or any part thereof, is disposed of or used for any purpose other than those hereinabove provided, title to said property shall revert to party of the first part, its successors or assigns.

" 'The restrictions and *covenants* as to use of said premises herein set forth shall be binding and obligatory upon the City of Casper and likewise upon Natrona County, Wyoming, and the successors and assigns of either or both.' " (Italics supplied).

Plaintiffs' pleading thereupon alleges that "under the terms of said agreement the condition subsequent hereinabove set forth and contained in said deed was amended and modified to read: (here is quoted the paragraph hereinbefore given commencing "Provided that said real property", etc.)

Plaintiffs also plead that in the year 1938 the defendant City with Natrona County began constructing a

"City-County building" on a site "located about half a mile from said Block 32 and said City Hall building"; that after this new construction was completed the defendant during the year 1940 "moved its Council Chamber and the offices of its Mayor, City Treasurer, City Clerk, Water Commissioner, Street Commissioner, City Attorney, Police Justice and the offices of its various and divers subordinate employees and agents from said City Hall Building into said City and County Building."

This statement is followed by the averment that since 1940 "the executive, legislative, and administrative activities and functions" of the defendant have been carried on "in said City and County Building", and said City has not maintained in said City Hall building the above enumerated city offices; that a county court house or jail building have never been constructed by the County of Natrona on said Block 32 and that the defendant has never used "that portion of said Block 32 on which said City Hall Building was constructed and now stands for public park purposes."

The two subsequent paragraphs of plaintiffs' pleading read:

"That since the Defendant City ceased to maintain and use said City Hall Building as and for City Hall purposes it has used said City Hall Building for purposes other than those permitted and designated in said deed as it stood originally and as it was modified by the agreement aforesaid in that it has continuously since sometime in 1940 leased and rented *most* of the rooms and offices contained in said building to private individuals and business corporations.

"That during *most* of the time since 1941, the Defendant City has leased, rented and permitted the use of *portions* of said building to and by organizations, businesses and governmental agencies having no connection with the City of Casper or the County of Natrona

and performing no municipal function of that City or County, including the Boy Scouts of America, Insurance Adjustment agencies and a department of the United States government, to-wit: War Assets Administration." (Italics supplied).

The remaining portions of the second amended petition allege the claim that the title and right of possession to said Block 32 reverted to and vested in these plaintiffs and the deed of June 27, 1918 should be cancelled and title to and possession of said Block decreed to plaintiffs; that on March 17, 1947 plaintiffs presented to the Council of said City their verified claim for a conveyance to them from defendant of these premises thus notifying said City of their intention to claim a forfeiture by reason of the above alleged "violations of defendant's right, title and interest in and to said property"; that the City and its council have failed and refused to comply with said claim and demand, and still do so; that notwithstanding plaintiffs' claim aforesaid defendant has unlawfully and without right or title thereto remained in possession of said real property in violation of plaintiffs' rights.

The prayer of the pleading seeks a decree cancelling the deed of July 27, 1918 and also the agreement of July 26, 1938; that the title to and right to immediate possession of said Block be decreed to plaintiffs and that said land be restored to them.

The original petition in this litigation was filed by plaintiffs June 25, 1947, and the second amended petition December 2, 1948. The City's demurrer that the second amended petition "does not contain sufficient facts to constitute a cause of action against said defendant City of Casper" was filed December 10, 1948. The order sustaining this demurrer was rendered March 21, 1949 and entered on the court's journal March 30, 1949. On March 23, 1949 plaintiffs elected

to stand upon said second amended pleading and on March 25, 1949 judgment was rendered (entered in the court's journal the 30th day of March, 1949), dismissing the action. The Honorable H. R. Christmas, Judge of the Third Judicial District heard the cause in the District Court under assignment therefor, the Honorable C. D. Murane, the presiding judge of the Seventh Judicial District having been removed from the cause by the affidavit of plaintiffs' counsel alleging his bias and prejudice.

It is contended for plaintiffs that the City has violated the alleged conditions subsequent as asserted in the pleading above reviewed and that Block 32 aforesaid has in consequence become subject to the operation of the reverter clause annexed to the conditions and that plaintiffs are entitled to have the property in question decreed to them with right of immediate possession.

The violations of the restrictive conditions in the instruments described above and relied on by plaintiffs appear to be that in 1940 the City moved certain of its offices to the newly erected City and County building, to-wit: the Council Chamber, Mayor's office, the offices of the City Clerk, City Treasurer, Water Commissioner, Street Commissioner, City Attorney, and Police Justice, and has not since 1940 carried on its executive legislative and administrative functions in said City Hall building; that since some time in 1940 the City has leased and rented *"most* of the rooms and offices contained in said building to private individuals and business corporations", and since 1941 has *"most"* of the time "leased, rented, and permitted the use of *portions* of" said building to and by the Boy Scouts of America, Insurance Adjustment Agencies and a department of the United States Government, to-wit: War Assets Administration: and that the City has

"never used that portion of said Block 32 on which said City Hall building was constructed and now stands for public park purposes."

"The term 'condition subsequent' "—says the American Law Institute's Restatement of the Law of Property, Section 24—

"denotes that part of the language of a conveyance, by virtue of which upon the occurrence of a stated event the conveyor or his successor in interest, has the power to terminate the interest which has been created subject to the condition subsequent, but which will continue until this power is exercised."

Comment "b" under this section additionally explains that:

*"Power of termination.* Whenever an estate subject to a condition subsequent is created, some person has the power to terminate this estate upon the occurrence of the stipulated event. Thus such an estate does not end automatically and by expiration as does an estate subject to a special limitation. On the contrary, it is cut short, or divested, if, but only if, the person having the power chooses to exercise it. This option to terminate an estate upon breach of a condition subsequent is referred to in this Restatement as a 'power of termination' ".

The same text, Section 57 states also that:

"On the occurrence of the event which constitutes a breach of a condition subsequent annexed to an estate in fee simple defeasible, the estate does not terminate. The estate is not terminated unless and until the power of termination is exercised."

In accordance with the rule established by the courts generally and presently to be mentioned comment "b" under said Section 57 points out that:

"When conduct is construed as constituting a breach of the condition, the owner of the power of termination can enforce a forfeiture. This construction is made

only when the conduct, strictly construed, constitutes such breach."

So 26 C. J. S. 482, Section 147 defines a condition subsequent as:

"one operating on an estate already created and vested and rendering it liable to be defeated. The estate vests immediately on the execution and delivery of the deed. All that remains in the grantor is the possibility of reverter or right of entry on condition broken."

The plaintiff's second amended petition with its alleged conditions subsequent must be considered in the light of certain legal rules of construction as we find them announced by the authorities as given below. We shall assume that the restrictions imposed upon the use of the property in question by the City of Casper shall be regarded as "conditions subsequent" although the parties to the agreement of July 26, 1938 over their several signatures and acknowledgments refer to the restrictions contained in the warranty deed of June 27, 1918 as "covenants" and also say in that agreement that the J. M. Carey and Brother corporation "does hereby *covenant*, consent and agree that the *covenants* contained in said warranty deed of June 27, 1918 hereinbefore set forth shall be amended and modified by the substitution of" the restrictions undertaken to be imposed by that agreement. The authorities to be kept in mind in this connection are these:

In 19 Am. Jur. 527, Section 65 it is stated with the support of an extremely elaborate list of citations that:

"It is a well-settled rule that conditions tending to destroy estates, such as conditions subsequent, are not favored in law. They are strictly construed. Accordingly, no provision will be interpreted to create such a condition if the language will bear any other reasonable interpretation, or unless the language, used equivocally, indicates an intention upon the part of the

grantor or devisor to that effect and plainly admits of such construction."

To the same effect are 31 C. J. S. 33, Section 20; 1 Tiffany Real Property 314, Section 193.

49 C. J. 120, Section 114 says that:

"Where the pleading is silent regarding a material fact, the presumptions are against the pleader, and no intendment can be made in his favor. Thus a material fact, if not alleged, is presumed not to exist."

And in 41 Am. Jur. 335, Section 65 after mentioning the familiar statutory rule of liberal construction of pleadings announces that:

"Even under this rule, essential averments lacking in a pleading may not be construed into it, or, in other words, facts not alleged by a plaintiff must be taken as having no existence, or will be assumed to be adverse to him."

See also cases cited by the text last mentioned including Cushman vs. Cloverland Etc. Co. 170 Ind. 402, 84 N. E. 759; and also McClure vs. Warner 16 Neb. 447, 20 N. W. 387; Chicago Etc. Ry. Co. vs. Shepherd 39 Neb. 523, 58 N. W. 189; Croft vs. Scottsbluff County, 121 Neb. 343, 237 N. W. 149. In Pry vs. Pry, 225 Ind. 458, 75 N. E. 2d 909 we find the rule stated:

"Omitted facts are to be considered as adverse to the pleader under the general presumption that a party will set forth all the facts favorable to his case. Penn-American etc., Co. v. Harshaw, etc., Co., 1910, 46 Ind. App. 645, 647, 90 N. E. 1947; Cushman v. Cloverland Coal etc., Co., 1908; 170 Ind. 402, 408, 84 N. E. 759, 16 L. R. A., N. S., 1078, 127 Am. St. Rep. 391; Fink v. Cleveland, etc., R. Co., 1914, 181 Ind. 539, 543, 105 N. E. 116."

Another rule which is especially pertinent in the case at bar where a second amended petition comes before us is that well stated by Judge Bratton in the United

States Circuit Court of Appeals, Tenth Circuit by the opinion filed in Weeks vs. Denver Tramway Corporation, 108 Fed. 2d 509 where this language was employed:

"The trial court having held the complaint insufficient, and plaintiff having elected not to plead further, it must be presumed that she had pleaded her cause in the manner most favorable to herself and that additional facts essential to the statement of a claim or cause of action for which relief could be granted do not exist. See Driskell v. Powell, 5 Cir., 67 F. 2d 484; Nev-Cal Electric Securities Co. v. Imperial Irr. Dist., 9 Cir., 85 F. 2d 886.

"The challenge to the complaint admitted all facts well pleaded and the reasonable inferences to be drawn from them but no more. It did not admit either inferences or conclusions of fact not supported by allegations of specific facts upon which the inferences or conclusions rests, or conclusion of law." (Citing authorities additional).

So in Walin vs. Young 181 Ore. 185, 180 Pac. 2d 535 the court remarks that:

"And, since the plaintiffs are standing upon the complaint after a demurrer to it had been sustained, it must be presumed that they have stated their case as strongly as the facts will permit, and the language of the complaint must be construed most strongly against the pleader. Simpson v. First National Bank, 94 Or. 147, 153, 185 P. 913."

With the declared principles established by these authorities as set forth above before us, let us first consider whether the City has violated the restriction embodied in the warranty deed aforesaid that Block 32 in question "is to be used" after the erection of a City Hall building on said real estate "for the maintenance of a public park." We do not think that plaintiffs' pleading discloses any violation of this restriction.

In the agreement entered into between the **J. M.** Carey and Brother corporation and the City under date of July 26, 1938 over the signatures of both these parties after stating that before the expiration of three years from the date of said warranty deed the City erected a City Hall building for said City which was suitable for its needs, there is found the specific recital that:

*"said premises have been and now are used exclusively for the maintenance thereon of said City Hall building and also for the maintenance of a public park and for no other purposes."* (Italics supplied).

The recital next following in said agreement states further that the City has not "disposed of said premises or any part thereof and title to same as conveyed to it by said warranty deed still rests in said City of Casper." So it appears that never at any time during the two decades after the date of this warranty deed had there arisen cause for the exercise by the grantor therein of the power to forfeit the City's estate and title for failure to comply with the restriction as to its use of the premises in question for park purposes. There is nothing called to our attention in plaintiffs' second amended petition which indicates that so far as its use for park purposes is concerned, the City since July 26, 1938 has ever omitted to use the premises in question as a public park in any other manner than it did during the more than twenty years elapsing since the date of the deed aforesaid and since the erection of a City Hall on said premises, a matter of at least seventeen years. Indeed under the authorities above referred to we are obliged to conclude that the conduct of the City in compliance with the restriction we are now considering has been above all cause for criticism.

It is true that the pleading before us alleges that the City has never used "that portion of said Block 32 on

which said City Hall building was constructed and now stands for public park purposes." But that structure was put upon this land on account of the express direction and requirement of the grantor in the deed aforesaid, J. M. Carey and Brother corporation. Then too, there is nothing said in either the warranty deed or the agreement made long afterwards as to the period during which the land involved should be used by the City for park purposes. Under authorities subsequently to be herein reviewed that fact appearing, only a reasonable time could be inferred as required for such use. Neither is there anything in the deed or subsequent agreement which indicates how much of Block 32 was to be used for park purposes, whether all or only portions of it except as may be inferred from the proviso that a City Hall should be put upon it. From the construction placed upon the language of the deed by both parties to the instrument, the use made by the City for park purposes was entirely agreebale to both. We hardly conceive it was the intention of the City in entering into subsequent agreement after accepting the deed, to provide for the destruction of a building which the grantor itself directed to be put on this block, which occupied only a portion of the premises and which evidently was thought at the time to be large enough to meet the needs of the growing City of Casper in housing its several municipal offices. The later agreement does not suggest any such requirement. Both parties to the deed and the agreement knew, of course, that if a building were erected thereon only the remaining portion of the block could possibly be used for park purposes as long as that structure stood. It would be absurd to raze the building in order to comply with such a requirement and which neither party obviously intended either originally or subsequently when they dealt with each other regarding the premises in question. We are told also in appellant's brief that

since 1938 "the use of the block as a public park is one of the four ways in which the City may use the block."

It is conceded by plaintiffs that the defendant City in all respects complied with the requirements of the warranty deed in erecting a City Hall building within three years after the date of that instrument. We need not consider that requirement other than to notice the fact stated in the preceding sentence. Did the City violate the restriction contained in the deed that Block 32 should be used after its erection "for the maintenance thereon" of the City Hall for the City of Casper "with such changes and additions as made from time to time become necessary" and that the property in question should not be "disposed of for any other purposes than" City Hall and public park purposes? We have already demonstrated that so far as public park purposes are concerned the City has at all times complied with the restrictive use in that respect.

One of the well-known meanings of the words "dispose of" is "to alienate" Webster's New International Dictionary. In Scott vs. State, 6 Ga. App. 332, 64 S. E. 1005 we find it said:

" 'Dispose of' means 'to alienate; to effectually transfer.' United States v. Hacker (D. C.) 73 Fed. 292, 294. It covers 'all such alienations of property as may be made in ways not otherwise covered in the statute; for example, such as pledges, pawns, gifts, bailments, and other transfers and alienations.' Bullene v. Smith, 73 Mo. 151, 161. 'To dispose of' in a popular sense as used in reference to property means to part with a right to or ownership of it; in other words, a change of property. If this does not take place, it would scarcely be said the property was disposed of.' Reynolds v. State, 73 Ala. 3. See, also, Franklin v. State, 12 Md. 246, 248."

The same words with this meaning are used by the parties themselves in the 1938 agreement in the clause already referred to, viz. "Whereas said City of Casper has not disposed of said premises or any part thereof and title to same as conveyed to it by said warranty deed still rests in said City of Casper." It is not claimed by plaintiffs as we understand the matter that even now there has been any alienation of the City's title to said Block 32.

The complaint made by plaintiff's second amended petition appears to be that because certain of its city offices as above enumerated have been moved to the new City and County building located elsewhere than on the premises in question and because *"most* of the time" since 1941 the City has "leased, rented and permitted the use of *portions* of said building" to other organizations not connected with the City, especially naming the Boy Scouts of America, insurance adjustment agencies and the War Assets Administration. In other words plaintiffs seek a forfeiture of the City's title to Block 32 with a City Hall building thereon situated on account of certain alleged temporary uses of portions of that building by other agencies not connected with the usual municipal official activities carried on in such a structure. It is not asserted that all of the building in question at all times, since the removal of certain city offices to the new City and County building in 1940, has been used by strictly non-municipal agencies and organizations. It is not asserted either that the uses which have been made of said City Hall building since 1940 are such as to conflict with and prevent a proper use of the building for the City's needs as they now exist. The City has practically doubled its population since the warranty deed aforesaid was executed and delivered. It may be inferred that its needs have greatly increased for office space and that they have been largely met at present by the City's use

of the new City and County building. However, as the City grows in the future it can be reasonably expected that larger and greater portions of the old City Hall building will be required for its strictly municipal activities. Under the authorities already above reviewed it is a fair conclusion also that some of the time since 1940 and 1941 some portions of the building are still being used for municipal purposes.

What should be regarded as a City Hall and how may it be used? Answering the first part of this query we find the adjudicated cases not very numerous. In Champion Iron Co. vs. City of South Omaha, 93 Neb. 56, 139 N. W. 848, a case cited by plaintiffs, it was held that where city bonds were issued pursuant to statutory authority in order to enable the city authorities "to purchase the necessary grounds and erect thereon a city hall and other buildings" for the city's use, the installation in the police court building of jail cells in connection with the municipal court held there, was permissible and the plaintiff having done the installation work should be compensated from the money derived from the sale of the bonds. In disposing of the case the court discussed to some extent the uses to which a City Hall might be put saying "the uses of a city hall building may be manifold." And also:

"We are of opinion that it is not an essential requisite to the validity of a contract under bonds voted for the erection of a city hall *that the same roof cover every department of the city administration.* If the architect should with the approval of the city authorities distribute the city departments, executive, judicial, and administrative, into separate buildings on the site which has been devoted to city hall purposes as a part of the same general plan, and in connection with and in relation to each other, we think there is nothing in the statute to forbid." (Italics supplied).

The court concludes that "It is impossible to lay down an exact definition of the term 'city hall. '". No question of forfeiture for alleged violation of condition subsequent was raised in the case last cited.

In First Wisconsin National Bank vs. Town of Catawba, 183 Wis. 220, 197 N. W. 1013 it was held that a statute empowering a town "to raise money to purchase or build a town hall or other building for the use of the town" vested power in a town to borrow money to erect a town hall though it was so designed as to be capable of being used for recreational purposes as well as for official business of the town. The court remarks: "In most of the states for many years, town and city halls have been used, not only for the purely official business of municipalities, but, when adequate, for assemblies of citizens for the discussion of questions affecting the general welfare. The statute now in question authorizes towns 'to raise money to purchase or build a town hall or other building for the use of the town'. Doubtless this language would not authorize a town to borrow money for the erection of a building to be used *wholly* for commercial or private purposes, but it is language vesting a large discretion in the voters as to the kind of a building to be erected for the public use." (Italics supplied).

No question of forfeiture of a vested title in the town was involved in this case.

However, in French vs. Inhabitants of Quincy, 85 Mass. (3 Allen) 9 a question of forfeiture was directly up for decision. The action was one brought by the devisee of Daniel French against the defendants to recover by writ of entry a lot of land in the village of Quincy upon which the town house of the defendants stood. The deed granting the premises to the defendants provided that it was made:

"Always however upon this condition, that the parcel of land shall not be used for any other purpose than

as a place for a town-house for said inhabitants; and upon any breach of this condition, this conveyance shall be void to all intents and purposes."

It was claimed by the grantor's devisee that she was entitled to the land because the defendants had forfeited their estate by a breach of this condition. The defendants had erected a townhouse upon the land soon after the conveyance was made under date of April 19, 1844.

It is stated by the court that:

"The alleged breach of the condition consists in the uses to which the town-house has been put. In .the second story there is a hall. The entrance is in the middle of the front side. On either side of this entrance is a room. One room was rented for a clothing-store and tailoring establishment, from the completion of the building till about 1852. The other was rented for two or three years for an apothecary's shop and refreshment saloon, and afterwards for a bank. It was also used for a time for a post-office, and for a short time for a daguerreotype saloon. A part of the lower story has also been fitted up for a lock-up, and used more or less for the purpose for six or seven years. The hall has been used for lectures, theatrical entertainments, dances and exhibitions. These are the breaches complained of.

"There are two general principles to guide us in the decision of the question presented to us: 1. It is sufficient if a condition is performed in substance. Com. Dig. Condition, G. 14. 2. This being a claim for a forfeiture for an alleged breach of a condition subsequent, 'the words of the deed are to be taken most strongly against the grantor, and in favor of the grantee.' Per Shaw, C. J., in *Canal Bridge* v. *Methodist Religious Society*, 13 Met. 349. *Hadley* v. *Hadley Manuf. Co.* 4 Gray, 140."

We quote at some length from the court's opinion ordering judgment for the defendants as the discussion is, we think, of material aid in resolving the problems

presented by the cause at bar. The supreme judicial court of Massachusetts uses the following apt language:

"And while a town is erecting a structure of expensive and permanent materials, it is proper that a reasonable regard should be had to its prospective wants, such as its increase in population and business will be liable to create. Prudence would dictate that a building erected to last for centuries should be sufficient for the necessities and conveniences that may arise for a long time to come. In this view, the building may contain rooms not immediately wanted; and within reasonable limits, the town may exercise its own discretion on the subject. It is not contended that the town of Quincy has done anything unreasonable in this respect. The house contains no rooms but such as the town will be likely to need for municipal purposes.

"One further question remains. The town having erected and maintained on the premises a structure suitable for a town-house, and not in any particular unsuitable for such a house, has it broken the condition by any of the uses to which it has allowed the house to be put?

"It must be admitted that a town has no authority to erect buildings for the purpose of renting them as tailors' shops, or apothecaries' shops, or daguerreotype or refreshment saloons, or banks, or dancing halls; and if a principal object in the erection of this building had been all or any of these uses, the erection would have been illegal, and the inhabitants could not legally have been taxed for it. But it does not appear that it was erected for any such object. So far as appears, none of these uses were contemplated beforehand, nor have they interfered with the convenience of the town. It has used the building for municipal purposes, so far as was necessary; and has rented temporarily such portions of the building as it had no occasion to use for the time being.

"To hold that any use of any part of the building, except for the transaction of the business of the town, is illegal, would exclude from the hall the meetings of

political parties, agricultural societies, and conventions of every kind; and would be unreasonably strict. Such a position is not contended for. It is admitted that the use of the hall for lectures, etc., is not a violation of the condition. But this is a concession that the building may be used for some purposes that are not municipal. It is necessary therefore to establish some reasonable doctrine that should include these cases, and determine what other uses the town-house may be appropriated to without breach of the condition.

"The courts are of opinion that a town, having in its town-house rooms which it had authority to construct, as part of such building, and not having occasion to use them for the time being, is not obliged to keep them unoccupied, but may derive a revenue from them by renting them, or may allow them to be used gratuitously. Such a use of the property is within its legal authority. And if this be so, the condition of the deed is not broken. For it cannot be construed more strictly than to require of the town to maintain a town-house on the land which shall not be put to any illegal and unauthorized use."

See also Wheelock vs. City of Lowell, 196 Mass. 220, 81 N. E. 977.

We may recall that in Merryman vs. School District No. 16, 43 Wyo. 376, 5 Pac. 2d 267, which was a suit by a tax payer against a school district and its trustees to restrain them from leasing or allowing the use of a school district building either for hire or otherwise for dances, social entertainments or for any purpose other than school or educational purposes. Affirming a judgment for defendants it was pointed out that:

"It seems to be generally conceded that a municipal corporation, having erected a building in good faith for municipal or public purposes, has the right, when such building is no longer used by the municipality, or when parts of it are not needed for public use, or when at intervals the whole building is not so used, and when it does not interfere with its public use, to

permit it to be used, either gratuitously or for a compensation, for private purposes."

Though no question of forfeiture of title was before the court in Cunningham vs. New York Central R. Co. 114 Ind. App. 90, 48 N. E. 2d 176 the question raised was broadly discussed and we believe what was there said affords material aid in reaching a proper conclusion in the case at bar. That was an action against the railroad company for breach of a covenant to maintain a railroad station on lands conveyed for that purpose. The restrictive covenant as to the use of lands so deeded was that the railroad company would "erect and maintain a station thereon" with certain other structures and also specified switches. This promise was made to plaintiffs intestate at the time when she deeded to the predecessor of the defendant certain acreage and right of way and was the consideration for such conveyance. The deed was dated March 27, 1905. March 1, 1939 the station was abandoned. In affirming a judgment upon a directed verdict in favor of the defendant the court's reasoning was in part as follows:

"Conditions subsequent, having the effect in case of a breach to defeat estates already vested, are not favored in law, and hence always receive a strict construction. Hunt v. Beeson, 1862, 18 Ind. 380; Jeffersonville, Madison & Indianapolis Railroad Company et al. v. Barbour et al., 1883, 89 Ind. 375; Sheets et al. v. Vandalia Railway Company, 1921, 74 Ind. App. 597, 127 N. E. 609, and it has been held in this state that the erection and maintenance of a depot upon the land conveyed, for a long period of years, is a substantial compliance with such a condition. Jeffersonville, Madison & Indianapolis Railroad Company et al. v. Barbour et al. supra; Sheets et al v. Vandalia Railway Company, supra; Cleveland Cincinnati, Chicago & St. Louis Railway Company v. Cross et al., 1928, 87 Ind. App. 574, 162 N. E. 253.

"Applying the rule of strict construction it was held in Jeffersonville, Madison & Indianapolis Railroad Company et al. v. Barbour et al. supra, in a case where property was deeded for depot purposes, but no time was fixed for the occupancy thereof for such purposes, that the parties must have intended that the occupancy should be for a reasonable time, that the railroad was not required for all time to come to use the premises for such purposes and the Court said, 'Had the grantors intended that the lot should be occupied by the railroad for all time to come for depot purposes, words suitable to express such intention would have been employed', and it is held in a majority of jurisdictions, though not in all, that in the absence of a provision specifying a term of years or perpetuity, such a covenant or condition subsequent does not require operation in perpetuity, or forever, but is complied with by performance covering a long term of years. Scheller v. Tacoma Ry. & Power Co., 1919, 108 Wash. 348, 184 P. 344, 7 A. L. R. 810 and note.

"The text writers do not differentiate between covenants and conditions in their treatment of the subject and there are many cases involving covenants which apply the rule of substantial compliance in cases similar to this. . . ." (Listing many authorities)

"Most of the cases adhering to the majority rule either use or quote with approval language to the effect that a covenant or condition of the kind under consideration is fairly complied with by the erection and maintenance of a station for a long period of years, and until the exigencies of business, the convenience of the public and the welfare of the railroad demand its removal, and it appears to us that this is the correct rule. It is based upon the theory that such a covenant or condition is presumed to be made subject to the exigencies of the company's further development, the general contingencies of business, the public interest and the continuing development of transportation routes." The cases presently to be reviewed disclose quite well, as it seems to us, the manner in which leading courts of this country over a long period of time have adhered to a strict construction of conditions subsequent

where the use of buildings to be erected upon lands conveyed for certain specified purposes is the subject of the restrictive condition.

In McKissick vs. Pickle, 16 Pa. St. 140 it appeared that one Ferguson and wife conveyed for a nominal consideration a lot of ground to named persons as trustees for those who had subscribed or might afterwards subscribe towards the erection of a school house or houses for public worship thereon. This conveyance was made subject to the condition that:

"if at any time hereafter the above described property, or any part of it, should be converted unto any other use than for the use of a school-house for the education of youths and a meeting-house for promulgating the gospel, and also a burying-ground, and such other improvements as may be advantagious and of use to the promotion of the aforesaid three objects, that then, and in that case, the said lot shall revert to the party of the first part, and to his *heirs and assigns.*"

A building was erected upon the deeded premises and used as a school building and as a meeting house for public worship. Subsequently one of the trustees allowed a Mrs. McCaffrey who had a seriously ill husband (who soon thereafter died) and four small children, to occupy said school house on account of her poverty and destitution. The building was not changed at all. She used the school house stove for all purposes. Bed clothes were nailed to the ceiling to conceal the bed. Some benches were removed. She paid no rent and remained there seven years when she left. Ejectment was brought by one of the trustees to recover the premises for breach of the condition in thus permitting Mrs. McCaffrey to use the building. Holding that there was no such breach as would work a forfeiture of the estate conveyed the court said in part:

"The proviso in the deed is entitled to a fair, liberal, benign interpretation, not according to its letter, but

its spirit. Viewing it in this aspect, I cannot bring myself to believe that it was in the contemplation of the parties (the grantor and those who contributed the funds to the erection of the building) that an occasional use of the property by a tenant at will, for purposes other than those mentioned in the deed, would work a forfeiture of the estate. To produce that effect, it must be by some permanent use different from those enumerated in the deed, such for example, as converting the building into a factory, or the land attached to it into arable land or pasture."

\* \* \* \*

"We think the defendant has failed to prove such a permanent use or occupation of the building, within the meaning of the deed, as to work a forfeiture; and so the court ought to have instructed the jury. The evidence shows, that although they had ceased to use it for a school, yet there was occasional religious worship in the building, one of the objects mentioned in the deed, by permission of the trustees, thereby exercising such control of it as to be inconsistent with the idea that Mrs. McCaffrey had any interest except at their will and pleasure. That the occupation continued for seven years makes no difference; for as it was in the commencement a possession at the will of the trustees, so it continued during the whole period to be held at their pleasure. It was temporary in its nature, and not a *permanent* use of the building, which alone can work a forfeiture."

Osgood vs. Abbott, 58 Me. 73 is a pertinent decision. In that case property was donated for a meeting house chapel, conveyance dated June 19, 1845 being made "in consideration of having a meeting house erected and continued on the lot of land" thereafter described. It was further stipulated in the conveyance that "this lot, being given for a meeting house lot, is to revert to me unless it should be improved for that purpose." The habendum clause read"to the said proprietors and their successors forever provided it be improved for the above purpose." The same year a meeting house

was built upon the lot. Religious services were held therein for some years. In 1859 the building ceased to be so used. The building was allowed to get out of repair; the stoves and furniture were removed. No religious services were held there until 1866 though slight repairs had been made on the structure from time to time.

It was claimed by the heirs and personal representative of the grantor that there had been a forfeiture of the estate for conditions subsequent broken. But the court ruled otherwise despite the evidence of remissness and neglect in maintaining religious services in the building. Said the court:

"The grant is to be construed most strongly against the grantor, and to prevent a forfeiture. *Hopper v. Cummings,* 45 Maine, 359; *Merrifield v. Cobleigh,* 4 Cush. 178.

"The condition is not to be enlarged by construction, so as to cover what is not necessarily implied by the terms used. It imposes upon the grantees the duty of erecting, and continuing upon the lot, a house for public worship. But these proprietors were not a parish, nor a religious society. It would not seem that there was any unanimity of religious sentiment among them. The original subscription paper and agreement devotes the house to the use of the Methodist denomination, so long as they furnish preachers who are acceptable to a majority of the proprietors; but when they fail to do so it would not seem, from the character of the arrangements made, that anybody stood charged with the duty of supplying preachers, and all must have contemplated the probability that the house, which the proprietors were bound to maintain, would often be, for longer or shorter periods, unoccupied. At all events, construed strictly as the law requires us to construe it, the condition in the deed does not require the proprietors, upon pain of forfeiture, to maintain preaching in the meeting-house, which they were to erect and continue upon the lot."

Of similar purport is the case of Mills et al. vs. Evansville Seminary et al., 58 Wis. 135, 15 N. W. 133 where the maintenance of a school building as such was involved. The court declined to enforce a forfeiture of the granted estate saying inter alia that:

"It is elementary law that such conditions are most strongly construed against the grantor, and that a forfeiture will not be enforced unless clearly established. It is doubtless true, as claimed by defendants' counsel, that courts do not hasten to seize upon mistake or neglect, or even misuser of property, to adjudge a forfeiture in cases of this nature."

Locke vs. Union Graded School District No. 6, 185 Okl. 471, 94 P. 2d 547 was also a case where the maintenance of a school building was considered. The owner of a larger tract sought to recover from the school district two acres thereof deeded by a former owner in a conveyance expressly providing that "the two acre tract of land was deeded for school purposes so long as same was used" for that purpose with the proviso "that when same ceased to be used" for that purpose "the title to the land should revert." Plaintiff claimed, the deed being given in 1914, by action commenced in 1934, that the school district had abandoned the two acre tract or had ceased to use it for the stated purpose for which the deed had been given. Affirming a judgment for the defendant the court declared that:

"A breach of such a condition subsequent is not lightly to be inferred, but must be made to clearly and unmistakably appear, before the person entitled to claim the reversion will be permitted to do so. The evidence in the case at bar does not satisfy such requirement, but, on the contrary, leaves ample ground for the inference that there never was any intention on the part of the school district to abandon the school site nor any intention to cease using it for the purposes specified in the deed, and that in fact there was no abandonment or any such cessation of use of the school site as would

bring into operation the provision in the deed for reversion."

The case of Central Land Company vs. City of Grand Rapids, 302 Michigan 105, 4 N. W. 2d 485 was an action in ejectment wherein the grantor, the plaintiff in the action, charged the defendant city with violating a condition subsequent inserted in its deed to the city and claimed that the title to the land conveyed had reverted to it. The condition appearing in the deed was:

"This conveyance is given upon the express condition that the two parcels of land above described shall be used solely for park, highway, street, or boulevard purposes; and if any part thereof be not used for any of such purposes, or at any time cease to be used for such purpose, or at any time be used for any other purpose, said part or parts shall immediately revert to the grantor, its successors or assigns; and it shall be lawful for the grantor, its successors, or assigns to reenter and repossess the same or any part or portion thereof, and thereafter to peaceably hold and enjoy the same as if these presents had not been made."

The deed was dated October 22, 1937. In 1939 plaintiff discovered oil on land adjacent to the deeded premises and commenced drilling operations. On July 12 of the same year the defendant city contracted with an oil company obligating the latter to drill for oil on the land conveyed to the city for park, street and boulevard purposes and oil was discovered. Claiming this action on the part of the city was a breach of the condition, plaintiff sought by this action to regain title to the land thus conveyed. Judgment for the defendant city was affirmed by the Supreme Court of Michigan. That court says in part on the point:

"Numerous decisions of this court, such as Barrie v. Smith, 47 Mich. 130, 10 N. W. 168, hold that conditions subsequent, tending as they do to forfeit estates, are to be strictly construed. In Adams v. First Baptist

Church, 148 Mich. 140, 111 N. W. 757, 11 L. R. A., N. S., 509, 12 Ann. 224, the headnote reads: 'Land was devised to a church "to be used as a parsonage and nothing else, and to be kept for that purpose and used for nothing else." There was no devise over. The house was not suitable for a residence for the minister, and it was his custom to rent it and live elsewhere. On ejectment by the residuary legatee, held that there was no breach of condition subsequent which should work a forfeiture.'

"We may say in the instant case, as Justice Moore said in the last-cited case: 'From whatever point of view the record before us is examined, in the light of these authorities, it does not disclose a breach of a condition subsequent which should work a forfeiture of the property devised.' "

The conclusion reached in disposing of the case was thus stated:

"Our conclusion is that this record does not disclose any real or substantial violation of the condition subsequent embodied in the deed under which the City of Grand Rapids took title from plaintiff. Neither the park property as a whole nor any substantial portion thereof is being used in any way or for any purpose which in any substantial degree interfere with the uses for which the property was conveyed to the city."

There was dissent in the case apparently on the ground that plaintiff had:

"an interest in the removal of oil from its property and the operation of oil wells by the city in property adjacent to plaintiff's property would tend to reduce the amount of oil recoverable by plaintiff from its own property."

In the case at bar it does not appear that plaintiffs have any interest to be protected by invoking the forfeiture clause in the deed to the City of Casper. What the ruling should be in case they had it is unnecessary to decide.

The latest case to come under our notice wherein the legal principles, already adverted to and specifically applied by the decisions above examined, were carefully considered, is that of Board of Commissioners of Oklahoma County vs. Russell et al., 174 Fed. 2d 778 decided May 6, 1949 by the United States Circuit Court of Appeals, Tenth Circuit. We find it of decidedly material aid in disposing of the case at bar. The action was one for the determination of title and recovery of possession of real property located in Oklahoma City, Oklahoma.

On January 3, 1903 C. C. Russell et al. were owners in fee of the land in question. They gave Oklahoma County on that day a warranty deed upon a substantial consideration paid for the conveyance. The deed contained a provision reading:

"This grant and conveyance is made however, subject to the following conditions:

"That if the said grantee shall fail and neglect to have erected on said ground herein conveyed a court house and jail to be used for court and jail purposes for said county or or before the first day of January, 1910, and shall fail to plant good healthy shade trees to *ornament* said ground, and make sufficient appropriation each year to procure proper care to be taken of such trees and ground, so that said trees shall live in a healthy condition, then and in that event this grant shall be null and void and said land shall revert to the grantors herein upon the grantors' paying to the said grantee herein the sum of Four Thousand Dollars together with interest thereon at the rate of seven per cent per annum from the date of this instrument."
The court states that:

"A court house and jail were erected by January, 1910, and trees were planted and maintained by the County until 1938, when the use of the buildings was discontinued as a court house and jail. Thereafter no further appropriations or expenditures were made for the maintenance or care of the trees."

The alleged breach of this condition was recited by the court to be:

"in that the County had failed to erect a court house and/or jail on said land, although a court house had been erected in part on this land; that it never did use any building erected on said land or any part thereof for jail purposes; that it had ceased to use the building erected partly on said land for a court house on or about the 31st day of October, 1937; that it had failed to plant good healthy shade trees to ornament said ground and to make sufficient appropriations each year to procure proper care thereof; and that in fact the County had made no appropriation whatever for that purpose since the year 1937."

Plaintiffs subsequently abandoned their claim for forfeiture so far as it rested upon the asserted failure to erect the jail on the tract in question and because the court house was placed only in part thereon. The plaintiffs had judgment in the trial court.

Reversing this judgment the appellate court stated that:

"It is agreed that the provision of the deed in question constitutes a condition subsequent. It follows that a breach thereof results in a forfeiture of the estate. It is also universally recognized that courts abhor forfeitures and that all provisions providing therefor will be strictly construed and that forfeitures will not be decreed except when required by the clear language thereof.

"The court concluded the language of the condition required the County to permanently and forever maintain the court house and jail on the premises and also maintain the trees on the grounds for the same period of time, and that a breach of either of these requirements would result in a forfeiture. In this we think the court erred. It must be noted that the provision does not require the County to permanently erect or to permanently maintain after erection a court house and jail or continuously thereafter use either of them. All

it requires is that the County erect 'a court house and jail to be used for court and jail purposes.' *The provision is entirely silent as to how long the county must maintain these buildings for such purposes.*

"It is a matter of common knowledge that buildings erected for municipal purposes in the early life of a municipality become wholly inadequate for such purposes as the community grows, expands and develops, and that newer and larger quarters become imperative and that many times it becomes necessary to the best interests of the community that the location of such new and future buildings be changed. We may assume that the parties to this transaction were men of more than ordinary understanding of such matters and we will not assume, in the absence of clear and concise language requiring such conclusion, that they intended by this transaction to shackle Oklahoma County to this location and to the use of these buildings continuously and forever or suffer the loss of its interest in this real estate. Fairly construed, the condition of this deed required the County to erect a court house and a jail within the stipulated time and use such buildings for court house and jail purposes, and to plant and maintain trees for a like period of time, and if it failed to do this, the deed then was to become null and void upon repayment of the consideration. All the authorities compel the conclusion that this constituted full compliance with the conditions of the deed." (Italics supplied).

After examining a number of supporting cases, including a very pertinent decision of the Supreme Court of the United States, the concluding paragraphs of the opinion filed which announce the ruling of the appellate court, read as follows:

"Here the County, in good faith, erected the required improvements within the period of time provided for with the intent that the location was permanent as distinguished from a temporary location, and continued to use these buildings and premises for the designated purposes for more than 27 years when the needs

of the County apparently required more commodious buildings and quarters located at another place.

"In line with all the authorities, we hold that the erection of the court house and the jail upon these premises and the continued use for such purposes for more than 27 years, and the planting and care of trees for a like period, constituted full compliance with the condition of this provision in the deed, and that the title of the County in the property was not subject to forfeiture when therafter they discontinued the further use of these premises for such purposes.

"If, as all these cases hold, a condition requiring permanent location or permanent use or dedication of property to a use did not require perpetual maintenance and dedication to such uses, certainly we should not hold that a deed which merely requires the County to erect buildings and use and maintain them for the purposes for which they were erected is to be construed as requiring the County to perpetually and forever use such property for such purposes."

Petition for writ of certiorari sought in the above case was on October 10, 1949 denied by the Supreme Court of the United States — U. S. —, 70 Sup. Ct. 64, 94 L. Ed. 41.

As heretofore indicated there is no statement in either the proviso paragraph of the warranty deed of date June 27, 1918 or the reverter paragraph following as to the time during which such restrictions in said instrument should prevail. We think that under the authorities we have at considerable length considered herein, the lapse of more than two decades before any suit for forfeiture of the City's estate in Block 32 was instituted is sufficient to be regarded as a compliance with the condition subsequent invoked here and in that instrument appearing. The City has not sold the property in question and it is still using it for public park purposes in the same manner as it has since the erection of the City Hall building as required by the war-

ranty deed aforesaid. We are not inclined to think that it was the purpose of that deed, so far as we can glean from a study of its language, to bind the City of Casper in its municipal activities, despite its growth and its changing needs due to increase in population, solely to this particular Block of land under penalty of losing title to that block and the building thereon situate of a change of site was deemed necessary to meet subsequent city needs as viewed by a later city administration. Note has above been made of the fact that the City has doubled its population since the warranty deed aforesaid was executed and delivered. As time elapses it may very well be that the quarters the City now occupies in the new City and County building will become altogether inadequate and more room for city functions and offices will be needed. It is common knowledge that our state and many of our cities have outgrown the public buildings erected for them in years gon by. Because the City Hall is not at this time entirely used for all municipal purposes is no reason, under the authorities we have above reviewed, upon which to base a forfeiture under said deed. There is no claim that the City has abandoned either the building or the remainder of Block 32 not used for the site of that structure.

So far as the so-called modified conditions set out in the agreement between the J. M. Carey and Brother corporation and the City are concerned, it is perfectly plain from its terms and the allegations of plaintiffs' second amended petition that it was entered into by the parties solely because it was thought at the time of its preparation and execution, July 26, 1938 that the site of the proposed new City and County building *might* be located upon Block 32 aforesaid. Accordingly the original conditions imposed in said warranty deed were enlarged to meet that contingency *if* it happened. Plaintiffs' pleading establishes that the contingency

never occurred. The authorities of the County of Natrona and those of the City as well in the exercise of their discretionary judgment deemed that another site should be chosen to meet the needs of both Natrona County and the City of Casper. That being so, the reason for the increased and enlarged conditions in said agreement having failed, we see no basis for the City's being bound by them. In other words the conditions set out in the warranty deed alone are the only controlling obligations to be now considered. It is to be observed also that the City paid the considerations recited in that agreement to the grantor in the deed aforesaid. Such considerations were obviously paid in order to obtain for the City a permit to erect a new City and County building "or a court house and jail building" on said Block 32. This permit, as matters eventuated, was never of any avail or use or capable of being invoked by the City. It is difficult to see why the City should be fettered by enlarged conditions which were only drafted to meet a supposed exigency which has never materialized and upon which only they were to operate.

But if we should be mistaken in this view, under the authorities above examined, we can not see that the mere temporary use of a part of the building erected as required by the deed aforesaid by other than solely city agencies should work a forfeiture of the City's title to the block in question. We say this having in mind the enlarged conditions, too, appearing in · the July 26, 1938 agreement. Plaintiffs' second amended petition says as we have seen that the City *most* of the time (but not *all* of the time) "leased, rented, and permitted" to other organizations not connected with the City of Casper the use of only *portions* of said building. Construing this phraseology strictly against the grantor it would fairly mean that these leases and permits were given to be at the will of the City subject to be

revoked at any time as the needs of the municipality might require. The War Assets Administration, a department of the United States Government, is mentioned as one of these organizations. We are no longer at war. Such agencies will, of course, sooner or later, if they have not already done so, disappear as the need for them ceases. The Boy Scouts of America are also mentioned as being allowed quarters in the City Hall building. It is not averred that this organization's occupancy of the building interferes in any way with the City's present use of the building. It is common knowledge that the Red Cross organization uses municipal or school district buildings for its occasional meetings whenever the need therefor arises.

The contention made by plaintiffs that the right of re-entry or power of termination upon dissolution of the J. M. Carey and Brother corporation passed to plaintiffs we do not find it necessary to consider. We assume that it did. We do not decide the point.

We are obliged to reach the conclusion that the District Court of Natrona County ruled correctly on the defendant City's demurrer and that its final judgment now being attacked should be affirmed.

*Affirmed.*

KIMBALL, J., concurs.

KIMBALL, Justice (concurring)

I concur in the affirmance of the judgment because I think the amended petition does not state a ground of forfeiture as provided for the deed of 1918, and that the grounds of forfeiture were not enlarged by the writing of 1938.

Two grounds of forfeiture are stated in the last paragraph of the deed of 1918, quoted in the foregoing opinion. One, the failure to erect a City Hall building

on the property, is not involved in the action. The other ground, as set forth in the deed, is "in case said described property (block 32) is disposed of for any other purposes than those stipulated" in the preceding paragraph, that is, "for the maintenance thereon of such City Hall for the City of Casper and also for the maintenance of a Public Park."

The property was used for the two permitted purposes from 1918 to 1940, and the petition does not allege that thereafter the part of property that could be used for the maintenance of a public park was not used for that purpose. If it be conceded for the moment that, after 1940, the property was disposed of for a purpose other than the maintenance of a City Hall, there is authority for holding that the continued maintenance of a park on the property prevents a forfeiture. Humphrey County Board v. Baker, 124 Tenn. 39, 134 S. W. 863. It is not necessary, however, that we affirm the judgment on this ground alone.

The rule of strict construction of conditions subsequent in order to prevent a forfeiture has been sufficiently explained by the Chief Justice, and I agree that the use or non-use of the City Hall building, as alleged in amended petition, was not a disposal of the property. I want to concede that "dispose of" may in some cases be given a broad meaning. Contentions involving the words have been considered by this court in at least three cases. State ex rel. Cross v. Board of Land Commissioners (on petition for rehearing) 50 Wyo. 205, 62 P. 2d. 516; Merryman v. School District, 43 Wyo. 376, 5 P. 2d 267, and Richardson v. Midwest Refining Co., 39 Wyo. 58, 82-83, 270 P. 154, 162. In the Richardson case we cited In re Hubbell, Trustee, 135 Ia. 637, 113 N. W. 512, 13 L. R. A. (N. S.) 496, 14 Ann. Cases 640, wherein the Iowa court, considering a trust deed which provided that the trustee should not "sell or dis-

pose of" certain land, held that a long-term lease was not a disposal of the property.

The writing of 1938, also quoted in the foregoing opinion, shows on its face that it was made in contemplation of a possible, but not required, joint use of the property by the City of Casper and the County of Natrona, and the plaintiffs allege in their petition that the writing was made "for the purpose of permitting certain additional uses therein specified and no others." In granting the permission for additional uses, the corporate grantor imposed numerous conditions or restrictions in addition to those stated in the deed of 1918, and I think a reasonable construction of the writing of 1938 requires us to hold that the additional conditions which were intended to be binding on both the city and the county, were not intended to create new and more burdensome conditions on the city until it used the property for the additional purposes. This construction does not, I think, raise a question of lack of consideration, but means that the City's promise to abide by conditions more onerous than those imposed by the deed of 1918 was subject to a condition precedent, the use of the property for additional purposes, a matter that was optional with the City and depended also on the will of the County. See Williston on Contracts, § 1970.

Judge Blume, in a dissenting opinion, suggests that it may have been intended that the City Hall and gorunds surrounding should be a sort of monument to the memory of Joseph M. Carey, and later in the opinion says that the monument, if such was the intendment of the conveyance of 1918, is gone. There has been no reference to a monument in the record or discussions by counsel. But the remarks are interesting. they omit to give the City any credit for erecting the building, establishing the public park, and for caring

for the property for 30 years. The plaintiffs do not allege that any part of the physical monument is "gone." The only complaint is that the building has been occupied at times by persons or agencies, who are respectable as far as we know, but not city officers. There is no reason to suppose that a court will be furthering the purpose of maintaining the monument by forfeiting the property to plaintiffs who are the statutory trustees of the dissolved grantor corporation, and would take the property for the benefit of the creditors, if any, and the stock-holders.

RINER, C. J., concurs.

## DISSENTING OPINION

BLUME, J., dissenting.

In 1918 J. M. Carey and Brother conveyed to the City of Casper the block of ground in question in this case, to be used for a city hall and park and for no other purpose whatever. The deed recited a consideration of $1.00. So I take it that the consideration was nominal and that the conveyance was actually a gift to the city of Casper upon the conditions mentioned therein. It was perhaps intended that the city hall and the grounds surrounding should be a sort of monument to the memory of Joseph M. Carey, at one time governor of, and at one time United States Senator from, this state. The building was erected and used till about 1940 when it was abandoned as a city hall (see below), and, according to the pleadings before us, all the principal offices of the city were removed to what is called a city-county building, a half mile away from the city hall. The premises in question are now used substantially for rental purposes, and possibly partially for park purposes if the surrounding vacant ground may be considered as a park, which is doubtful. I do not say that a really temporary use for other purposes

than those agreed on would be fatal. But the abandonment of the city hall as such in this case had continued for some seven years when this action was brought. That is an indication of permanent abandonment. See Trustees of Union College vs. City of New York, 173 N. Y. 38, 65 N. E. 853, 93 A. S. R. 569. The fact that the city joined in the construction of a city-county building, as appears from the pleadings, show almost conclusively an abandonment of the city hall as such for the forseeable future. Moreover, if in truth the abandonment was merely temporary, that fact was within the peculiar knowledge of the city, and it should have been put upon its defense in connection therewith.

While it may not be practical to give a precise definition of city hall as applicable to all situations, the general meaning is well known. In New England, where town meetings prevailed, it was the building where the citizens assembled for legislative and executive transactions. In other parts of the country, it is the building in which the legislative department of the city, and at least part of the principal executive officers perform their official functions. Websters New International Dictionary defines it as "a chief municipal building of a city." The Dictionary of American English on Historical Principles, Volume 1, defines it as "a building in which the principal officials of a city have their offices." Hence, the monument to the memory of Joseph M. Carey, if such was the intendment of the conveyance of 1918, is gone, and that within the short period of approximately twenty years.

In 1938 the parties, in writing, agreed to substitute a different condition subsequent for that contained in the deed of 1918. The substituted condition subsequent is as follows (leaving out unessentials) : "Provided that said real property * * * shall be used for the

maintenance thereon of a city hall building * * * or the construction and maintenance thereon of city-county building * * * or for public park purposes and for no other purpose whatsoever * * *. It is further agreed that in the event said property *or any part* thereof, is disposed of *or used* for any purpose other than those herein provided, title to said property shall revert to party of the first part, its successors or assigns." Then follows a clause making the restrictions for use binding upon the successors and assigns of the city and county.

This provision is about as strong and explicit a condition subsequent as could be drawn. And it is clear that it was violated at least in part when the premises were abandoned as a city hall, as heretofore stated, and when the building was used, in the main, for rental purposes. It is true that courts dislike conditions subsequent which result in forfeiture of the estate conveyed. At the same time they cannot afford to encourage clear breaches of a contract which the parties have made.

Counsel for the city argues that the proviso in the agreement of 1938 was executory that is to say that it should not be in force unless the county should participate in the erection of a city-county building on the premises in controversy. I fail to see any indication in the agreement that such contention is tenable. The agreement recites among other things (leaving out unessentials) : "Whereas it may be desired hereafter to construct and maintain upon said premises a city-county building * * *. Now therefore * * * the party of the first part (J. M. Carey and Brother) consent and agree that the covenants contained in the said warranty deed of June 27, 1918 * * * shall be amended and modified by the substitution therefor of the following to-wit." Here follows the proviso already mentioned. The

agreement was evidently made at the request of the City of Casper, and it was then apparently hoping that the county of Natrona would join in the construction of a city-county building on the premises. J. M. Carey and Brother consented to the enlarged use. So far as the parties to the agreement were concerned, the agreement was fully executed. So far as they were concerned, nothing further could be done. J. M. Carey and Brother could not be held responsible that the county subsequently refused to join in the construction of a city-county building on the premises here involved. The agreement was not made conditional on that occurrence. It could easily have been made so, if that had been the intention. The proviso of 1938 was substituted for the proviso or condition of 1918, so that it is difficult for me to see how the substituted proviso or condition could still continue to exist, as claimed by counsel. Substitution means to put one thing in place of another.

It would be more intelligible to me, if it were contended that after the county of Natrona failed or refused to join the city in constructing a city-county building on the premises, there was a want or failure of consideration for the more clean-cut proviso of 1938. No such contention is made, and it is difficult for me to believe that it would be good. J. M. Carey and Brother agreed that the premises might be used for the construction and maintenance of a city and county building. That was clearly an enlarged use over and above mentioned in the proviso or condition of 1918, and I fail to see any basis for the claim that that was not sufficient consideration for the agreement of 1938. It may be, from the standpoint of the present, that the city should not have entered into that agreement. But courts do not rewrite contracts which parties have made. Judging from the recitals here, the city then

had not come to a definite conclusion that it would join with the county in the construction of a city-county building, or at least at the place where it was finally built. The recital is that "it *may* be desired hereafter to construct and maintain upon said premises a city and county building." It apparently, as already stated, hoped that this would come about. And to create a basis for negotiations with Natrona county, it desired to have the agreements of 1938. J. M. Carey and Brother furnished that basis, which the city otherwise would not have had. Hence, I consider the agreement of 1938 controlling therein, and that would necessarily, as the case now stands, lead to a reversal of the judgment herein.

I ought not, perhaps, altogether omit reference to cases which hold that an agreed use is not intended to be a perpetual use. The cases on the subject are not in harmony. See Annotation 7 A. L. R. 817. One of the latest cases on the subject, and a well reasoned case, is Rosecrans vs. Pacific Elec. Ry. Co., 21 Cal. 2d 602, 134 P. 2d 245, in which it is held that a grant upon condition to establish and maintain a street railway is not satisfied by establishing and maintaining it for the period of thirty years. The court said in part: "The plan contemplates permanency in the improvement and use of the right of way, rather than mere temporary expediency. Under such circumstances, it is not to be supposed that it was intended that the conditions need be complied with for any such limited period as 10, 20 or 50 years * * *. The condition in question requires that the specified passenger service must be both established and maintained. Effect should be given to both of those words. Even if establishment be construed to mean merely to commence, mere commencement will not suffice to satisfy the condition. It must also be maintained." In analogy to that case, the maintenance

of a city hall, or a city and county building, implies permanence. So does the clause which makes the agreement of 1938 binding upon the successors and assigns of the city and the county. Moreover, if the agreement related merely to the maintenance of a city hall or a city and county building, the situation would be more nearly analogous to some of the cases on the subject. But it differs from any of the cases which I have found, in that the alternative use is for a public park. Parks, if not absolutely necessary, are highly desirable. In many cities lands are condemned to establish them, and I perceive no reason why they may not be established substantially in perpetuity. It is difficult to see why it would be against public policy or against the public interest for a city—at least in a case of a gift—to make an agreement that premises shall be used exclusively for either such buildings or as an alternative, (or subsequently) for a public park, and make such agreement binding upon a condition subsequent as in this case. To hold otherwise will, I think, merely result in less or no gifts being made to a public body upon condition, and I question that that would be desirable. And if such an agreement is valid in the first place, it is difficult to see why it may not be enforced according to the agreed conditions. In any event the burden to show that full compliance with the contract herein was against public interest or impossible, is on the city, and should not and cannot be determined under or in view of the pleadings before us. Rosecrans vs. Pacific Elec. Ry. Co., supra, Atlanta & W. P. R. Co. vs. Camp, 130 Ga. 1, 60, S. E. 177. In short I think that plaintiffs in their pleadings have stated a prima facie valid cause of action. That is as far as I need to go herein.

The judgment herein should be reversed.